Citation Nr: 1438768 
Decision Date: 08/29/14 Archive Date: 09/03/14

DOCKET NO. 10-29 380 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Winston-Salem, North Carolina


THE ISSUES

1. Entitlement to an initial rating of 70 percent prior March 21, 2013, for an anxiety disorder.

2. Entitlement to an initial rating in excess of 70 percent for an anxiety disorder, to include a total disability rating based on individual unemployability (TDIU) due to the anxiety disorder. 


ATTORNEY FOR THE BOARD

D. Whitehead, Counsel


INTRODUCTION

The Veteran served on active duty from June 1968 to June 1970.

This matter comes before the Board of Veterans' Appeals (Board) on appeal from an October 2009 rating decision issued by the Department of Veterans Affairs (VA) Appeals Management Center (AMC) in Washington, D.C. Jurisdiction over the case was subsequently returned to the VA Regional Office (RO) in Winston-Salem, North Carolina. 

The case was most recently before the Board in February 2013, at which time the Board remanded the claim for further development in accordance with a July 2012 Memorandum Decision issued by the United States Court of Appeals for Veterans Claims. While the claim was in remand status, the rating for the Veteran's anxiety disorder was increased to 70 percent, effective March 21, 2013. This action did not resolve the Veteran's appeal.

In the February 2013 remand, the Board directed the originating agency to provide the Veteran with a Statement of the Case (SOC) for the TDIU claim and to return the case to the Board only if the Veteran perfected a substantive appeal for this issue. The RO provided the Veteran with an SOC in May 2013. However, the Veteran did not submit a substantive appeal in response to the SOC. Nevertheless, the RO certified the issue to the Board as a perfected appeal. See Percy v. Shinseki, 23 Vet. App. 37 (2009) (by treating an issue as if it were part of a claimant's timely filed substantive appeal, VA waived any objections it might have had to the timeliness of the appeal with respect to the matter). In any event, since the Veteran's only service-connected disability is the anxiety disorder at issue in this appeal, the unemployability issue is a component of the anxiety claim and the Board has jurisdiction over the TDIU claim. See VAOGCPREC 6-96. 

The record before the Board consists of the Veteran's paper claim folders and electronic records within Virtual VA and the Veterans Benefits Management System. 

In October 2013, the Veteran raised an informal claim for service connection for a heart disorder, to include as due to Agent Orange exposure. This issue has not been adjudicated by the Agency of Original Jurisdiction (AOJ). Therefore, the Board does not have jurisdiction over it, and it is referred to the AOJ for appropriate action. 38 C.F.R. § 19.9(b) (2013).

The issue of entitlement to an initial rating in excess of 70 percent for an anxiety disorder, to include a TDIU due to the anxiety disorder, is addressed in the REMAND that follows the below ORDER.


FINDING OF FACT

During the period of the claim prior to March 21, 2013, the anxiety disorder was productive of occupational and social impairment with deficiencies in most areas.


CONCLUSION OF LAW

The criteria for a 70 percent initial rating prior to March 21, 2013, for an anxiety disorder have been met. 38 U.S.C.A. § 1155 (West 2002); 38 C.F.R. §§ 4.3, 4.7, 4.126, 4.130, Diagnostic Code 9413 (2013).


REASONS AND BASES FOR FINDING AND CONCLUSION

General Legal Criteria 

Disability evaluations are determined by the application of VA's Schedule for Rating Disabilities (Rating Schedule), 38 C.F.R. Part 4 (2013). The percentage ratings contained in the Rating Schedule represent, as far as can be practicably determined, the average impairment in earning capacity resulting from diseases and injuries incurred or aggravated during active service and their residual conditions in civil occupations. 38 U.S.C.A. § 1155; 38 C.F.R. § 4.1.

Where there is a question as to which of two evaluations shall be applied, the higher evaluation will be assigned if the disability picture more nearly approximates the criteria required for that rating. Otherwise, the lower rating will be assigned. 38 C.F.R. § 4.7.

It is not expected, especially with the more fully described grades of disabilities, that all cases will show all the findings specified; findings sufficiently characteristic to identify the disease and the disability therefrom are sufficient; and above all, a coordination of rating with impairment of function will be expected in all cases. 38 C.F.R. § 4.21.

The Veteran's psychiatric disability is evaluated under Diagnostic Code 9413, 38 C.F.R. § 4.130. Under Diagnostic Code 9413, the following applies:

A 10 percent evaluation is warranted when there is occupational and social impairment due to mild or transient symptoms which decrease work efficiency and ability to perform occupational tasks only during periods of significant stress, or; symptoms controlled by continuous medication.

A 30 percent evaluation is warranted when there is occupational and social impairment with occasional decrease in work efficiency and intermittent periods of inability to perform occupational tasks (although generally functioning satisfactorily, with routine behavior, self-care, and conversation normal), due to such symptoms as: depressed mood, anxiety, suspiciousness, panic attacks (weekly or less often), chronic sleep impairment, mild memory loss (such as forgetting names, directions, recent events).

A 50 percent evaluation is warranted when there is occupational and social impairment, with reduced reliability and productivity, due to such symptoms as flattened affect; circumstantial, circumlocutory, or stereotyped speech; panic attacks more frequently than once a week; difficulty in understanding complex commands; impairment of short-and long-term memory (e.g., retention of only highly learned material, forgetting to complete tasks); impaired judgment; impaired abstract thinking; disturbances of motivation and mood; and difficulty in establishing and maintaining effective work and social relationships.

A 70 evaluation is warranted when there is occupational and social impairment, with deficiencies in most areas, such as work, school, family relations, judgment, thinking, or mood, due to such symptoms as: suicidal ideation; obsessional rituals which interfere with routine activities; speech intermittently illogical, obscure, or irrelevant; near-continuous panic or depression affecting the ability to function independently, appropriately and effectively; impaired impulse control (such as unprovoked irritability with periods of violence); spatial disorientation; neglect of personal appearance and hygiene; difficulty in adapting to stressful circumstances (including work or a worklike setting); and an inability to establish and maintain effective relationships.

A 100 percent evaluation is warranted for total occupational and social impairment, due to such symptoms as: gross impairment in thought processes or communication; persistent delusions or hallucinations; grossly inappropriate behavior; persistent danger of hurting self or others; intermittent inability to perform activities of daily living (including maintenance of minimal personal hygiene); disorientation to time or place; and memory loss for names of close relatives, own occupation, or own name.

The symptoms listed are not intended to constitute an exhaustive list, but rather serve as examples of the type and degree of the symptoms, or their effects, that would justify a particular rating. Mauerhan v. Principi, 16 Vet. App. 436 (2002).

In evaluating the evidence, the Board also considers the Global Assessment of Functioning (GAF) scores assigned during the period on appeal. The GAF is a scale reflecting the psychological, social, and occupational functioning on a hypothetical continuum of mental health illness. See DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS (5th ed.) (DSM-V); Carpenter v. Brown, 8 Vet. App. 240 (1995). GAF scores ranging from 61 to 70 reflect some mild symptoms (e.g., depressed mood and mild insomnia) or some difficulty in social, occupational, or school functioning (e.g., occasional truancy, or theft within the household), but generally functioning pretty well, and has some meaningful interpersonal relationships. Scores ranging from 51 to 60 reflect moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers). A GAF score of 41 to 50 is reflective of serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) or any serious impairment in social, occupational or school functioning (e.g., no friends, unable to keep a job). A GAF of 31-40 indicates some impairment in reality testing or communication (e.g. speech is at times illogical, obscure, or irrelevant) or major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood (e.g. depressed man avoids friends, neglects family, and is unable to work). A GAF of 21-30 indicates behavior is considerably influenced by delusions or hallucinations or serious impairment in communication or judgment (e.g. sometimes incoherent, acts grossly inappropriately, suicidal preoccupation) or inability to function in almost all areas (e.g. stays in bed all day; no job, home, or friends). See Carpenter v. Brown, 8 Vet. App. 240, 242 (1995).

Except as otherwise provided by law, a claimant has the responsibility to present and support a claim for benefits under laws administered by the Secretary. The Secretary shall consider all information and lay and medical evidence of record in a case before the Secretary with respect to benefits under laws administered by the Secretary. When there is an approximate balance of positive and negative evidence regarding any issue material to the determination of a matter, the Secretary shall give the benefit of the doubt to the claimant. 38 U.S.C.A. § 5107; 38 C.F.R. §§ 3.102, 4.3; see also Gilbert v. Derwinski, 1 Vet. App. 49, 53 (1990).

To deny a claim on its merits, the evidence must preponderate against the claim. Alemany v. Brown, 9 Vet. App. 518, 519 (1996), citing Gilbert, 1 Vet. App. at 54.

Factual Background and Analysis

In accordance with 38 C.F.R. §§ 4.1, 4.2 (2012) and Schafrath v. Derwinski, 1 Vet. App. 589 (1991), the Board has reviewed all evidence of record pertaining to the history of the service-connected disability. The Board has found nothing in the historical record which would lead to the conclusion that the current evidence of record is not adequate for rating purposes. Moreover, the Board is of the opinion that this case presents no evidentiary considerations which would warrant an exposition of remote clinical histories and findings pertaining to the disability.

Initially, the Board notes that the Veteran has been diagnosed with anxiety disorder, posttraumatic stress disorder (PTSD) and major depressive disorder during the pendency of his claim. When the record does not differentiate or distinguish exactly what measure of the Veteran's symptoms are attributable to the service-connected anxiety disorder versus his nonservice-connected psychiatric disorders, the Board has resolved this doubt in the Veteran's favor according to 38 C.F.R. §§ 3.102 and 4.3 and for all intents and purposes attribute all symptoms in question to the service-connected disability, so in this particular instance to his anxiety disorder. See Mittleider v. West, 11 Vet. App. 181, 182 (1998).

The record shows that the Veteran underwent a private psychiatric evaluation in August 2006. At that time, he reported a psychiatric history significant for the following symptoms: anger; irritability; multiple drug use; nightmares; flashbacks; depressed mood; suicidal and homicidal attitude; hypervigilance; jumpiness; emotional lability; easy to anger; and sleep impairments. He reported having painful memories of in-service incidents and that he engaged in risk taking behavior. The Veteran relayed that he had multiple suicidal ideations in the past with no plan. He was noted to drink daily in order to go to sleep and reportedly could not sleep without alcohol. The examiner rendered a diagnosis of PTSD and assigned a GAF score of 30. He concluded that the Veteran had attitude problems, a history of angry outburst, and polysubstance abuse. He determined that these symptoms affected the Veteran's personal and social life. 

A February 2007 private medical record shows that the Veteran sought psychiatric treatment for his disability. At that time, the Veteran stated that his symptoms had remained the same; he reported that he continued to have nightmares, be hypervigilant, and easily startled. He continued to have a "bad" feeling. On the mental status examination, the Veteran was described as moody with a constricted affect. His cognition was intact and there was no abnormality of thought. He was not found to be a risk for suicide or violence. 

During an April 2007 private psychiatric treatment consultation, the Veteran reported that he was doing a little better. He stated that he still experienced flash backs, insomnia, anxiousness, and restlessness. The mental status examination revealed that the Veteran presented with an "ok" mood and dull affect. 

In response to his claim for service connection, the Veteran was afforded a VA examination in May 2009. He reported having difficulty since about 1985 and that his symptoms were somewhat sporadic. The Veteran stated that he felt "bad" approximately 50 percent of the time. He reported his symptoms during those times as poor sleep, increased nervousness, and decreased concentration. He reported having difficulty falling asleep and experiencing interrupted sleep approximately four to five nights a week, along with nightmares approximately three to four times a week. The Veteran stated that he had intrusive thoughts three times a week and felt anxious 65 percent of the time. Additional symptoms included a short temper, intolerance to crowds, hypervigilance, and an easy startle response. The examiner noted that the Veteran lived with his wife and had a close relationship with his children. The Veteran also had a few friends, played golf and attended church. He relayed that he had started a business selling insurance, which was not going well. 

On the mental status evaluation, the Veteran presented with a neat appearance and was cooperative. He was oriented times three. There was no evidence of loose association of flight of ideas. The Veteran did not exhibit any bizarre motor movements or tics. The examiner described the Veteran's mood as calm and his affect as appropriate. He did not endorse any suicidal or homicidal thoughts. There was no impairment of his thought processes or communication. The examination was negative for evidence of delusions, hallucinations, ideas of reference, or suspiciousness. The Veteran's memory, insight, and judgment appeared to be adequate. He was assigned a GAF score of 65. After reporting these findings, the examiner again noted the Veteran's symptoms to include nightmares, intrusive thoughts, sleep disturbances, irritability at times, and sometimes easily startled. The examiner highlighted that the Veteran was not withdrawn, socialized with his wife and friends, and had some interests. He found the Veteran to have mild and persistent symptoms of an anxiety disorder and determined that the Veteran's psychiatric symptoms resulted in slight impairment of his employment and social functioning. 

A February 2010 private medical record indicates that the Veteran resumed psychiatric treatment after having dropped out in February 2007. The Veteran reported that he continued to feel angry and irritable. Additional symptoms included nightmares, flashbacks, a depressed mood, some suicidal thoughts, hypervigilance, jumpiness, and difficulty sleeping. He stated that he had not been communicating well with his wife. The Veteran reportedly had been withdrawn and had not been socializing much outside of the home. During the mental status examination, the Veteran reported having a depressed and anxious mood. His affect was noted to be congruent to his mood. There was no evidence of psychosis or delusions, and the Veteran's thought processes were goal directed and logical. He was alert and oriented. His insight and judgment were described as good. The examiner prescribed the Veteran antidepressant medications.

During a March 2010 private psychiatric consultation, the Veteran reported that he still had problems getting out of the house and that he did not "want to face the people." His sleep was noted to be a little better, but he reported having low energy. The examiner made notations of "dull" and "constricted" on the mental status examination. 

A March 2010 VA mental health initial evaluation note shows that the Veteran was referred for a depression evaluation and treatment. The Veteran was noted to be married, with adult children and multiple grandchildren. He described traumatic incidents that occurred during his service in Vietnam, and the examiner noted the Veteran to have cycles of PTSD symptoms that include intrusive thoughts, flashbacks, insomnia, nightmares, and restlessness. The Veteran reported having "good" days, characterized by enough energy, hard work, concentration, motivation, and helping people. His "bad" days consisted of isolation, insomnia, bizarre dreams, racing thoughts, poor social interactions, feelings of guilt regarding dysfunctional relationships with friends and people, irritability, impaired memory, anhedonia, and paranoid thoughts that people were against him. 

On the mental status examination, the Veteran was oriented and appropriately groomed. He was cooperative, demonstrated good eye contact, and was noted to have impaired concentration. There were no psychomotor abnormalities noted, with the exception of a slow response and racing thoughts at times. His speech was slow, soft, and of a low tone. He was coherent and present. During the examination, his mood was slightly liable and his affect was depressed. There was no evidence of hallucinations or any suicidal or homicidal ideations. The examiner noted florid delusions of a pervasive feeling that people were against him or after him. The Veteran reported that he would turn his back against the wall in any setting and constantly watch people who passed at his back. His recent and remote memory was impaired. The Veteran's insight and judgment were fair. The examiner diagnosed anxiety disorder, PTSD, and rule out major depression. The examiner reported the Veteran's GAF score as 50. 

An October 2010 VA mental health consultation note includes the Veteran's report of having flashbacks, intrusive thoughts, insomnia, disturbing dreams of his military service, and a paranoid feeling that people were watching his back. The clinical examination revealed that he was oriented, coherent, and spoke with a low-toned voice. His affect was slightly anxious. The Veteran was noted to be paranoid and to have crying spells when he was reminded of traumatic military experiences. There was no evidence of mood swings and he was not found to be at risk for suicide. 

VA records dated in January 2012 show that the Veteran participated in group psychiatric therapy. These records reflect his symptoms as including problems with sleep and a lack of interest in things. There are no reports of any suicidal or homicidal ideations. 

The Veteran most recently underwent a VA examination to assess the severity of his psychiatric disability on March 21, 2013. The Veteran reported that he was still married but that he had no close friends and had rarely socialized since the last VA examination. He stated that he received psychiatric treatment from a private provider, but he did not use any psychiatric medications. His psychiatric symptoms included the following: a depressed mood; anxiety; suspiciousness; panic attacks more than once a week; chronic sleep impairment; impaired short- and long-term memory; flattened affect; disturbances of motivation and mood; difficulty establishing and maintaining effective work and social relationships; difficulty adapting to stressful circumstances, including work or a work-like setting; suicidal ideation; obsessional rituals which interfere with routine actives; and intermittent inability to perform activities of daily living, including maintenance of minimal personal hygiene. His GAF score was 52 and his psychiatric disorder was diagnosed as anxiety disorder. The examiner identified the occupational and social impairment due to the anxiety disorder as occupational and social impairment with deficiencies in most areas, such as work, school, family relations, judgment, thinking and/or mood. The examiner concluded that the frequency and severity of the Veteran's anxiety disorder had worsened during the pendency of the claim. 

A June 2013 private evaluation report shows further assessment of the Veteran's service-connected psychiatric disorder. The private psychiatrist noted that he had previously treated the Veteran from 2006 to 2007, at which time the Veteran dropped out of treatment. He returned to treatment in 2010 but dropped out again in 2011. The Veteran was noted to be married and to work selling insurance from his home. His psychiatric history was significant for feelings of guilt regarding traumatic experiences during his service in Vietnam, depression, and suicidal thoughts. At the time of the examination, the Veteran endorsed psychiatric symptoms that included: disturbing thoughts of his experience in Vietnam; disturbing dreams; avoidance of thoughts and activities that reminded him of his military experiences; a loss of interest in previously enjoyable activities; feeling distant and "cut off" from other people; feeling emotionally numb and unable to have loving feelings towards people who are close to him; feelings of a foreshortened future; sleep impairment; irritability; angry outbursts, difficulty concentrating; depression; an inability to experience pleasure; passive suicidal thoughts; emotional lability; difficulty making decisions; poor energy; and fatigue. On the mental status examination, the Veteran maintained good eye contact and appeared anxious and depressed. He denied any auditory or visual hallucinations or any suicidal or homicidal ideations. There was no evidence of psychosis or delusions. The Veteran was alert and oriented. He demonstrated some word searching and thought blocking, and his ability to recall was described as slightly impaired. The Veteran reiterated having problems with his ability to focus and concentrate. The private psychiatrist described the Veteran's insight and judgment as fair. The examination resulted in diagnoses of PTSD and major depressive disorder. His GAF score was 39. 

After careful review of the evidence, the Board finds that a 70 percent rating is also warranted for the psychiatric disability during the period of the claim prior to March 21, 2013. Since the effective date of service connection, the record reflects that the Veteran's psychiatric symptoms created deficiencies in his family and social relations, judgment, thinking, and mood due to suicidal ideations, obsessional rituals which interfered with routine activities, near-continuous depression affecting the ability to function appropriately, and impaired impulse control (such as unprovoked irritability with periods of violence). Evidence of record supports that the Veteran's symptoms have included suicidal ideations, depressed mood, hypervigilance, angry outbursts, paranoid thoughts, impaired memory and concentration, irritability, anxiety, social withdrawal, and isolation. Additionally, the Veteran's GAF scores primarily ranging from 30 to 52 (with the exception of the May 2009 VA examination) indicate moderate to severe symptoms and impairment in several areas. The Board acknowledges that the May 2009 VA examiner opined that the Veteran's PTSD was productive of mild impairment of his employment and social functioning, and assigned a GAF score corresponding to this conclusion. Nevertheless, the evidence of record, in particular the treatment and evaluation records from the Veteran's private treating psychiatrist, supports a finding that a 70 percent rating is warranted throughout the period of the claim.


ORDER

Entitlement to a 70 percent rating for an anxiety disorder during the period of the claim prior to March 21, 2013, is granted, subject to the criteria applicable to the payment of monetary benefits.



REMAND

The Veteran claims entitlement to a TDIU due to his service-connected psychiatric disability. Although the record indicates that his disability results in some impairment in his occupational functioning, as reflected by the 70 percent rating assigned above, it remains unclear whether he is unable to secure substantial employment due to his service-connected anxiety disorder. Thus, the Veteran must be afforded an appropriate examination and a medical opinion obtained as to this issue. 

Accordingly, this case is REMANDED to the RO or the Appeals Management Center (AMC), in Washington, D.C., for the following actions:

1. The RO or the AMC should arrange for the Veteran to undergo a VA examination with an appropriate examiner to determine the degree of severity of the Veteran's anxiety disorder and whether the Veteran is unemployable due to his service-connected anxiety disorder. The claims files and any pertinent evidence in the electronic files that is not contained in the claims files must be made available to and reviewed by the examiner in conjunction with the examination. Any indicated evaluations, studies, and tests deemed to be necessary should be accomplished.

The RO or the AMC should ensure that the examiner provides all information required for rating purposes. In addition, the examiner should be instructed to provide an opinion as to whether it is at least as likely as not (50 percent or greater probability) that the Veteran's anxiety disorder is sufficient by itself and without regard to advancing age to preclude the Veteran from obtaining or maintaining any gainful employment consistent with his education and occupational experience.

All examination findings, along with the complete rationale for all opinions expressed, should be set forth in the examination report.

2. The RO or the AMC should also undertake any other development it determines to be warranted.

3. Then, the RO or the AMC should readjudicate the claim for an initial rating in excess of 70 percent for an anxiety disorder, to include on the basis of individual unemployability. If the benefit sought on appeal is not granted to the Veteran's satisfaction, a Supplemental Statement of the Case should be issued, and the Veteran should be afforded the requisite opportunity to respond before the case is returned to the Board for further appellate action.

By this remand, the Board intimates no opinion as to any final outcome warranted. 
 
The Veteran need take no action until he is otherwise notified, but he may furnish additional evidence and/or argument during the appropriate time frame. See Kutscherousky v. West, 12 Vet. App. 369 (1999).

This REMAND must be afforded expeditious treatment. The law requires that all claims that are remanded by the Board or the Court for additional development or other appropriate action must be handled in an expeditious manner. See 38 U.S.C.A. §§ 5109B, 7112 (West Supp. 2013).



______________________________________________
Shane A. Durkin
Veterans Law Judge, Board of Veterans' Appeals


Department of Veterans Affairs