Citation Nr: 1523822 
Decision Date: 06/04/15 Archive Date: 06/16/15

DOCKET NO. 13-20 557 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Muskogee, Oklahoma


THE ISSUES

1. Entitlement to service connection for hepatitis C. 

2. Entitlement to an initial compensable evaluation for umbilical (ventral) hernia, status post-surgical repair. 

3. Entitlement to an initial compensable evaluation for residual scar, status post hernia repair. 

4. Entitlement to an initial rating in excess of 10 percent for right ankle strain.

5. Entitlement to an initial rating in excess of 10 percent for tinnitus.

6. Entitlement to an initial compensable rating for scar status post hernia repair, as secondary to umbilical (ventral) hernia.

7. Entitlement to a compensable evaluation for bilateral hearing loss.


REPRESENTATION

Appellant represented by: Mr. John Berry, Attorney at Law 


ATTORNEY FOR THE BOARD

J. Murray, Counsel 


INTRODUCTION

The Veteran served on active duty in the United States Army from October 2001 to February 2002 and from February 2006 to June 2007, and he had additional service in the Army National Guard. 

These matters come on appeal before the Board of Veterans Appeals (Board) from a March 2013 rating decision by the Department of Veterans Affairs, Regional Office located in Muskogee, Alabama (RO), which in pertinent part, denied the benefits sought on appeal. 

The issues of entitlement to service connection for hepatitis as well and entitlement to higher ratings for right ankle strain, tinnitus, scar status post hernia repair, as secondary to umbilical (ventral) hernia, and bilateral hearing loss are addressed in the REMAND portion of the decision below and is REMANDED to the Agency of Original Jurisdiction (AOJ).


FINDINGS OF FACT

1. For the entire period under appeal, the Veteran's disability due to umbilical hernia was manifested by no more than a small recurrent hernia, but did not require the need of a supportive belt or involve weakening of abdominal wall. 

2. For the entire period under appeal, the Veteran's residual scar, status post umbilical hernia repair has been manifested by no more than a well-healed, linear, scar that measured 4 centimeters (cm) by 1 cm that did not cause limitation of movement. 


CONCLUSIONS OF LAW

1. The criteria for an initial compensable rating for a service-connected umbilical (ventral) hernia have not been met. 38 U.S.C.A. § 1155 (West 2014); 38 C.F.R. §§ 4.7, 4.114, Diagnostic Code 7339 (2014).

2. The criteria for an initial compensable rating for a residual scar, status post umbilical hernia repair, have not been met. 38 U.S.C.A. § 1155; 5107(b) (West 2014); 38 C.F.R. §§ 4.1, 4.2, 4.3, 4.7, 4.118, Diagnostic Code 7801-7805 (2014).


REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

VA's Duty to Notify and Assist 

VA will assist a claimant in obtaining evidence necessary to substantiate a claim, but is not required to provide assistance to a claimant if there is no reasonable possibility that assistance would aid in substantiating the claim. VA must also notify the claimant of any information, and any medical or lay evidence, not previously provided to VA that is necessary to substantiate the claim. 38 U.S.C.A. §§ 5103, 5103A; 38 C.F.R. § 3.159. As part of the notice, VA must specifically inform the claimant and the claimant's representative, if any, of which part, if any, of the evidence is to be provided by the claimant and which part, if any, VA will attempt to obtain on behalf of the claimant.

Notice to a claimant should be provided at the time or immediately after, VA receives a complete or substantially complete application for benefits. 38 U.S.C.A. § 5103(a); Pelegrini v. Principi, 18 Vet. App. 112, (2004). The timing requirement applies equally to the effective date element of a service connection claim. Dingess v. Nicholson, 19 Vet. App. 473 (2006). 

The Board finds that the Veteran has been provided adequate notice in response to the claims. The record shows that the Veteran received notification in November 2007 and September 2012 advising what the evidence must show and of the respective duties of VA and the claimant in obtaining evidence. These letters also provided the Veteran with appropriate notice with of the disability rating and effective date elements of his claims. 

The Board also finds the Veteran has been provided adequate assistance in response to the claims. The Veteran's service medical records are of record. Post-service VA treatment records have been obtained. The Veteran has been provided VA examinations dated in April 2008 and January 2013. Therefore, remand for additional VA examination is not necessary and there is no bar to proceeding with a final decision in this case.

 Neither the Veteran nor representative has identified any outstanding evidence, to include medical records, which could be obtained to substantiate the claims. The Board is also unaware of any outstanding evidence. 

When there is an approximate balance of positive and negative evidence regarding any issue material to the determination of a matter, VA shall resolve reasonable doubt in favor of the claimant. 38 U.S.C.A. § 5107; 38 C.F.R. § 3.102; Gilbert v. Derwinski, 1 Vet. App. 49 (1990). To deny a claim on its merits, the evidence must preponderate against the claim. Alemany v. Brown, 9 Vet. App. 518 (1996).

Increased Rating 

Disability ratings are determined by the application of the VA's Schedule for Rating Disabilities. 38 C.F.R. Part 4. The percentage ratings contained in the Rating Schedule represent, as far as can be practicably determined, the average impairment in earning capacity resulting from diseases and injuries incurred or aggravated during service and their residual conditions in civil occupations. 38 U.S.C.A. § 1155; 38 C.F.R. §§ 3.321(a), 4.1. 

It is not expected, especially with the more fully described grades of disabilities, that all cases will show all the findings specified; findings sufficiently characteristic to identify the disease and the disability therefrom are sufficient. A coordination of rating with impairment of function will be expected in all cases. 38 C.F.R. § 4.21.

Where there is a question as to which of two ratings shall be applied, the higher rating will be assigned if the disability picture more nearly approximates the criteria required for that rating. Otherwise, the lower rating will be assigned. 38 C.F.R. § 4.7.

The rating of the same disability under various diagnoses is to be avoided. 38 C.F.R. § 4.14. However, that does not preclude the assignment of separate ratings for separate and distinct symptomatology where none of the symptomatology justifying a rating under one diagnostic code is duplicative of or overlapping with the symptomatology justifying a rating under another diagnostic code. Esteban v. Brown, 6 Vet. App. 259 (1994). 

The Board has reviewed all evidence of record pertaining to the history of the service-connected disabilities. The Board finds nothing of record which leads to a conclusion that the evidence of record is not adequate for rating purposes. 38 C.F.R. §§ 4.1 , 4.2, 4.41, 4.42; Schafrath v. Derwinski, 1 Vet. App. 589 (1991).

The Veteran's umbilical (ventral) hernia is rated under Diagnostic Code 7339. A 20 percent rating is warranted for small ventral hernias that are not well-supported by belt under ordinary conditions, healed ventral hernias, or post-operative wounds with weakening of abdominal wall and indication for a supporting belt. A 40 percent rating is warranted for large ventral hernias that are not well-supported by a belt under ordinary conditions. A maximum 100 percent rating is warranted for massive, persistent, and severe diastasis of recti muscles; or, extensive diffuse destruction or weakening of muscular and fascial support of the abdominal wall so as to be unoperable. 38 C.F.R. § 4.114, Diagnostic Code 7339.

A review of the record shows that the Veteran underwent an umbilical hernia surgical repair in April 2006 during his period of service. He filed a claim for entitlement to service connection for residuals of hernia repair shortly within a year of his separation from service in June 2007. His claim was initially denied in an April 2008 rating decision. Despite clinical findings of status post hernia repair with single residual scar, the available service treatment record did not reflect a history of in-service hernia repair. Subsequently, additional service treatment records were associated with the claims folder and the claim was reconsidered in a March 2013 rating decision. At that time, the RO awarded service connection for umbilicial (ventral) hernia, status post repair, and assigned a noncompensable evaluation, effective from June 2, 2007. The RO also awarded two separate ratings for residual scars. It awarded a 10 percent evaluation for service connection for tender scar, status post hernia repair, as well as a noncompensable evaluation for residual scar, status post hernia repair, both effective from June 2, 2007. The Veteran appealed the initial noncompensable evaluations for umbilicial (ventral) hernia and residual scar disabilities. (As a parenthetical, it is unclear to the Board why the RO awarded two separate awards for what appears to be the same residual surgical scar). 

At an April 2008 VA examination, the Veteran denied receiving any treatment for his hernia since the 2006 surgical repair. He also denied any problems from the hernia impacting his body health or weight. He denied any gastrointestinal symptoms as well as abdominal pain. On physical examination, the VA examiner observe no abnormalities involving the Veteran's abdomen, except for a single residual scar that measured that measured 4 cm by 1cm and was tender on examination. The scar was evaluated as stable and linear in nature. There was no evidence of disfigurement, ulceration, adherence, instability, tissue loss, inflammation, edema, keloid formation, hyperpigmentation or abnormal tissue. 

Subsequent VA treatment records show that the Veteran reported a history of hernia repair in service, but he did not complain of any symptomatology associated with residuals of status-post hernia repair. 

The Veteran was afforded another VA examination in January 2013. In that examination report, the VA examiner noted that the Veteran reported a history of pain in the umbilical region and subsequent surgical repair. He denied any current symptoms. It was noted that the Veteran had a residual surgical scar that was nonpainful, stable, and covered an area less than 39 square cm. In an addendum medical statement, the VA examiner identified the nature of the Veteran's umbilical hernia as analogous to ventral hernia, and noted that a small hernia was present on clinical evaluation. However, the small hernia did not require to be supported by a truss or belt. The Veteran was assessed with recurrent hernia following surgical repair. 

Based on the evidence above, the Board finds that the Veteran is not entitled to a compensable rating for umbilical (ventral) hernia at any point during the period under appeal. While the January 2013 VA examination report shows findings of a small recurrent hernia, there is no indication that the Veteran's hernia was not well supported by a belt or other supportive device at any point during the applicable period. Moreover, the Veteran denied any symptoms associated with the umbilical hernia at both the April 2008 and January 2013 VA examinations. At no point does the medical evidence of record indicate that he reported his umbilical (ventral) hernia required the use of a truss or belt, let alone, was not well-supported by one. Therefore, the Board finds that a compensable rating for umbilical (ventral) hernia disability is not warranted at any point during the period under appeal. 38 C.F.R. §4.114, Diagnostic Code 7339.

The Veteran's surgical scar is rated under 38 C.F.R. § 4.118, Diagnostic Code 7805, which rates on limitation of function of the affected body part. Here, the clinical evidence reflects that the Veteran has a single residual surgical scar that measures 4cm by 1cm that was stable but tender on examination. There is no clinical evidence of record that suggests that the Veteran's residual scar causes limitation of movement. In this regard, both the April 2008 and January 2013 VA examination report show that the Veteran denied any symptoms associated with his residuals of umbilical hernia repair and his abdomen was evaluated as normal, except for the single residual scar. 

Both the 2008 and the 2013 VA examiners found that the scar did not limit the Veteran's function. (Again, the Veteran already receives a compensable 10 percent evaluation for tender scar under Diagnostic Code 7804). The clinical findings do not in any way suggest limitation of motion caused by the hernia scar approximates a compensable rating for limited motion of the hip, thigh, or pelvic girdle. See generally 38 C.F.R. § 4.71a, Diagnostic Codes 5250-5255; see also 38 C.F.R. § 4.73, Diagnostic Codes 5313-5318. Consequently, a compensable rating on the basis of limitation of function from residual scar is not warranted. 38 C.F.R. § 4.118, Diagnostic Code 7805.

The Board concludes that the objective medical evidence and the Veteran's statements regarding his symptomatology do not show that his disabilities more nearly approximate the assignment of compensable ratings at any point during the period under. As shown above, and as required by Schafrath, the Board has considered all potentially applicable provisions of 38 C.F.R. Parts 3 and 4, whether or not they have been raised by the Veteran. The Board finds no provision upon which to assign any additional or separate ratings.

Consideration has been given to assigning staged ratings. However, at no time during the periods in question has the disability warranted a higher schedular rating than that assigned. Hart v. Mansfield, 21 Vet. App. 505 (2007). 

Accordingly, the Board finds that the preponderance of the evidence is against the assignment of any higher ratings for umbilical (ventral) hernia and residual scar during the relevant periods on appeal. 38 U.S.C.A. § 5107(b); Gilbert v. Derwinski, 1 Vet. App. 49 (1990).

Other Considerations

The Board has also considered whether this case should be referred to the Director of the VA Compensation and Pension Service for extraschedular consideration. 38 C.F.R. § 3.321(b)(1).

The threshold factor for extraschedular consideration is a finding that the evidence presents such an exceptional disability picture that the available schedular ratings for the service-connected disability at issue are inadequate. Therefore, initially, there must be a comparison between the level of severity and the symptomatology of the claimant's disability with the established criteria provided in the rating schedule for the disability. If the criteria reasonably describe the claimant's disability level and symptomatology, then the disability picture is contemplated by the rating schedule, the assigned rating is therefore adequate, and no referral for extra-schedular consideration is required. Thun v. Peake, 22 Vet. App. 111 (2008).

 The record shows that the manifestations of the Veteran's umbilical (ventral) hernia and residual scar are contemplated by the schedular criteria. There is no indication that the average industrial impairment from the disability has been in excess of that contemplated by the assigned rating. In addition, the evidence does not show frequent hospitalization beyond that envisioned by the currently assigned ratings. There is no indication that he is unable to work as a result of the umbilical hernia and residual scar disabilities, or that the disabilities causes a marked interference with employment beyond that contemplated by the currently assigned rating. Therefore, the Board finds that referral for extraschedular consideration is not warranted.

Lastly, the Board also notes that this case does not raise a claim for a total disability rating due to individual unemployability (TDIU). At no point during the period under appeal has the Veteran asserted that he is unable to obtain or maintain substantially gainful employment because of his noncompensable umbilical hernia and residual scar disabilities. Rice v. Shinseki, 22 Vet. App. 447 (2009) (a request for TDIU, whether expressly raised by a Veteran or reasonably raised by the record, is not a separate claim for benefits, but is rather part of the adjudication of a claim for increased compensation). The Veteran has not asserted that he is no longer able to work because of the severity of his disabilities. As such, a claim for TDIU has not been raised by the record.


ORDER

Entitlement to an initial compensable evaluation for umbilical (ventral) hernia disability is denied. 

Entitlement to an initial compensable evaluation for residual scar, status post umbilical hernia repair, is denied. 


REMAND

Hepatitis C

The Veteran seeks entitlement to service connection for hepatitis C. Based on a review of the record, the Board finds that additional development is needed prior to adjudication of the claim. 

Notably, in the March 2013 rating decision, the RO denied the Veteran's claim for service connection for hepatitis C, because the medical evidence of record failed to demonstrate a current diagnosis. Since then, the Veteran has submitted private laboratory records that indicate a diagnosis of hepatitis C.

The Veteran alleges several alternative risk factors in his exposure to hepatitis C. He reports that he received a tattoo on the back of his neck while in Afghanistan that was not done professionally, and he also reported having unprotected sex with numerous prostitutes and other soldiers. In addition, the Veteran reported that shared razors with others and on two occasions he searched vehicles for body parts after an IED detonation. The Veteran asserts that he was informed that he negative for hepatitis C prior to his service, and he was not evaluated as positive for hepatitis C until later. 

His service treatment records reflect that the Veteran reported that he had neonatal jaundice at the time of his enlistment, and entrance examination report showed he had a tattoo on his upper left arm. Moreover, the 2003 service treatment records show that the Veteran reported a history of hepatitis C with an onset of 2 or 3 years prior, but there is no indication in the record that the Veteran had hepatitis C until September 2007. Notably, a subsequent November 2007 VA laboratory report shows negative results for hepatitis C. 

As there is evidence of a current disability and a potential nexus to service, remand for examination is required.

Manlincon Issues

In the March 2013 rating decision, the RO awarded service connection for right ankle strain; tinnitus; scar status post hernia repair, as secondary to umbilical (ventral) hernia; and bilateral hearing loss and assigned initial disability ratings for these disabilities. In the March 2013 notice of disagreement, the Veteran's attorney included a section titled "Implied denial of claims" noting that the Veteran "disagrees with each and every denial, whether expressly or impliedly made by the Secretary, or any and all claims, whether formally or informally made by veteran. . . Veteran seeks appellate review thereof." The attorney further requested a Statement of the Case "for each and every claim , whether expressly or impliedly denied by the challenged Rating Decision." 

Given the grant of service connection and establishing of disabilities rating for these disabilities, the Board will broadly construe the disagreement to include the initial disabilities evaluations assigned. Accordingly, a statement of the case should be issues that addresses these claims. Thus, this claim must be remanded for issuance of a SOC addressing these issues. See Manlincon v. West, 12 Vet. App. 238 (1999).

Accordingly, the case is REMANDED for the following action:

1. 1. The Veteran and his representative must be provided a Statement of the Case addressing the Veteran's claims for higher evaluations for his right ankle strain; tinnitus; scar status post hernia repair, as secondary to umbilical (ventral) hernia. 

If, and only if, the Veteran files a timely substantive appeal should these issues be returned to the Board. See 38 C.F.R. § 19.29; Manlincon, 12 Vet. App. 238.

2. The Veteran should be requested to provide the names, addresses, and approximate dates of treatment of all medical care providers who have treated him for hepatitis C. After the Veteran has signed the appropriate releases, those records not already on file should be obtained and associated with the claims folder. 

3. Obtain and associate with the Veteran's claims file any outstanding VA treatment records documenting treatment for hepatitis C since January 2013.

4. All records obtained pursuant to this request must be included in the Veteran's claims file. If the search for such records has negative results, documentation to that effect should be included in the claims file, and the Veteran should be notified and allowed an opportunity to provide such records, in accordance with 38 C.F.R. § 3.159(c) &(e).

5. Schedule the Veteran for a VA liver examination. The claims file must be reviewed in conjunction with the examination. All required testing must be accomplished. The examiner must take from the Veteran a complete history covering all risk factors for hepatitis C. 

Based on a review of the record and the evidence from clinical examination, the VA examiner should answer the following: 

a. Does the Veteran have a current diagnosis of hepatitis C? 

b. If so, is it at least as likely as not (50 percent probability or greater) that the Veteran's hepatitis C was contracted during active military service. The Veteran reports military service risk factors of unprotected sex with prostitutes, sharing razors as well as being exposed to the blood of injured service members. 

A full and complete rationale for the opinion expressed is required. If the examiner feels that the requested opinion cannot be rendered without resorting to speculation, then the examiner must state whether the need to speculate is caused by a deficiency in the state of general medical knowledge (i.e., no one could respond given medical science and the known facts) or by a deficiency in the record or the examiner (i.e., additional facts are required, or the examiner does not have the needed knowledge or training). Jones v. Shinseki, 23 Vet. App. 382 (2010).

6. Following the completion of the foregoing, the RO/AMC should readjudicate the Veteran's claim. If the claim is denied, supply the Veteran and his representative with a supplemental statement of the case and allow an appropriate period of time for response. Thereafter, the claims folder should be returned to the Board for further appellate review, if otherwise in order.
The appellant has the right to submit additional evidence and argument on the matter or matters the Board has remanded. Kutscherousky v. West, 12 Vet. App. 369 (1999).

This claim must be afforded expeditious treatment. The law requires that all claims that are remanded by the Board of Veterans' Appeals or by the United States Court of Appeals for Veterans Claims for additional development or other appropriate action must be handled in an expeditious manner. See 38 U.S.C.A. §§ 5109B, 7112 (West 2014).




______________________________________________
DAVID L. WIGHT
Veterans Law Judge, Board of Veterans' Appeals



Department of Veterans Affairs