Citation Nr: 1710383 
Decision Date: 03/22/17 Archive Date: 04/11/17

DOCKET NO. 11-18 272 ) DATE
 )
 )

On appeal from the Department of Veterans Affairs (VA) Regional Office (RO) in St. Petersburg, Florida


THE ISSUES

1. Entitlement to service connection for sarcoidosis.

2. Entitlement to service connection for tuberculosis.

3. Entitlement to service connection for common variable immune deficiency and mycoplasma infection.

4. Entitlement to service connection for asthma.

5. Entitlement to service connection for chronic bronchitis.

6. Entitlement to service connection for residuals of pneumonia.

7. Entitlement to service connection for erectile dysfunction 

8. Whether new and material evidence has been submitted to reopen a previously-denied claim for entitlement to service connection for prostatitis.

9. Entitlement to service connection for posttraumatic stress disorder (PTSD).


REPRESENTATION

Veteran represented by: Stacey Penn Clark, Attorney at Law


WITNESS AT HEARING ON APPEAL

Veteran


ATTORNEY FOR THE BOARD

Heather J. Harter, Counsel


INTRODUCTION

The Veteran served on active duty from August 1965 to August 1991 to include service during the Vietnam era and the Persian Gulf War. 

This matter comes before the Board of Veterans' Appeals (Board) from RO decisions of January 2010 and December 2013. In March 2015, the Veteran presented sworn testimony in support of his appeal, during a hearing held at the RO before the undersigned Veterans Law Judge. 

In March 2016, the Board referred the Veteran's medical records to a VA physician with expertise in Occupational Medicine and public health for review and preparation of an opinion as to the effect of the various chemicals to which the Veteran was exposed during his military career upon his present state of health. The requested opinion was received in June 2016. In July 2016, a copy was provided to the Veteran and his attorney. His attorney has filed relevant written argument in response, along with additional medical evidence, for which she has waived initial RO review. 

The Board has re-characterized the issue previously identified as mycoplasma infection on the title page, as a legal matter, to include the underlying disease of common variable immune deficiency and to more accurately reflect the medical evidence pertaining to this issue and the posture of the Veteran's claim in light of the new medical evidence. 

The Veteran's attorney has additionally presented written argument as to why she believes the Veteran deserves service connection for chronic obstructive pulmonary disease. We note that this matter is not on appeal. Although the Veteran had made this claim, service connection for chronic obstructive pulmonary disease was denied in January 2010. The Veteran disagreed with the denial and the RO issued a Statement of the Case in June 2011. However, when the Veteran filed his appeal in June 2011, he explicitly did not include chronic obstructive pulmonary disease as an issue on appeal. Therefore, the Board does not have authority to review this claim here. 

In a recent brief, the Veteran's attorney argues that the Veteran is rendered unable to maintain employment due to his service-connected disabilities. However, it appears the Veteran is currently working, which would preclude the grant of a benefit predicated upon actual unemployment. Rather, the medical opinion the attorney submitted was that the Veteran should not "continue" to work and that it was medically necessary he quit working. When a claimant or the record reasonably raises the question of whether the Veteran is unemployable due to the disability for which an increased rating is sought, then part and parcel to that claim for an increased rating is whether a total rating based on individual unemployability is warranted as a result of that disability. Rice v. Shinseki, 22 Vet. App. 447 (2009). The Board does not, however, have any increased rating claims before it, so the holding of Rice does not apply. Furthermore, the question of unemployability is not raised because apparently the Veteran remains employed, and it is merely a suggestion at this point that he leave his job. The Veteran and his attorney are advised to submit a formal TDIU claim if the Veteran chooses to leave his employment or if his income is marginal.

The issues of entitlement to service connection for PTSD and prostatitis are addressed in the REMAND portion of the decision below and are REMANDED to the AOJ.


FINDINGS OF FACT

1. During the October 2013 hearing on appeal, prior to the promulgation of a decision in the appeal, the Veteran withdrew his appeals for service connection for sarcoidosis and tuberculosis.

2. The Veteran's common variable immune deficiency was either initially manifested during service or caused by chemical exposures during service. 

3. Mycoplasma infection, asthma, chronic bronchitis, and residuals of pneumonia are secondary to, or proximately caused by, common variable immune deficiency.

4. Erectile dysfunction is secondary to medication taken for service-connected depression.

5. New evidence received after the July 1992 denial relates to an unestablished fact and raises a reasonable possibility of substantiating the claim for entitlement to service connection for prostatitis.


CONCLUSIONS OF LAW

1. The criteria for withdrawal of the appeals for service connection for sarcoidosis and tuberculosis have been met. 38 U.S.C.A. § 7105 (West 2014); 38 C.F.R. § 20.204 (2016).

2. Service connection for common variable immune deficiency is warranted. 38 U.S.C.A. §§ 1110, 5107 (West 2014); 38 C.F.R. § 3.303 (2016).

3. Service connection on a secondary basis is warranted for mycoplasma infection, asthma, chronic bronchitis, and residuals of pneumonia. 38 U.S.C.A. §§ 1110, 5107 (West 2014); 38 C.F.R. §§ 3.303, 3.310 (2016).

4. Service connection for erectile dysfunction as secondary to depression is warranted. 38 U.S.C.A. §§ 1110, 5107 (West 2014); 38 C.F.R. §§ 3.303, 3.310 (2016).

5. Evidence received since July 1992 is new and material; therefore the claim for service connection for prostatitis is reopened. 38 U.S.C.A. §§ 5107, 5108 (West 2014); 38 C.F.R. § 3.156 (2016).


REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

Withdrawn issues

The Board may dismiss any appeal which fails to allege specific error of fact or law in the determination being appealed. 38 U.S.C.A. § 7105. An appeal may be withdrawn as to any or all issues involved in the appeal at any time before the Board promulgates a decision. 38 C.F.R. § 20.204. Withdrawal may be made by the appellant or by his or her authorized representative. 38 C.F.R. § 20.204. In the present case, at the Board hearing, the Veteran confirmed his desire to withdraw the appeals for service connection for sarcoidosis and tuberculosis and, hence, there remain no allegations of errors of fact or law for appellate consideration. Accordingly, the Board does not have jurisdiction to review these appeals and they are dismissed.




Duties to notify and assist

In light of the grants reached below, exposition of how the VA has satisfied its duties to notify and assist the Veteran is not necessary.

Standard of review

Once the evidence has been assembled, it is the Board's responsibility to evaluate the record. 38 U.S.C.A. § 7104(a). When there is an approximate balance of evidence regarding the merits of an issue material to the determination of the matter, the benefit of the doubt in resolving each such issue shall be given to the claimant. 38 U.S.C.A. § 5107; 38 C.F.R. § 3.102. In Gilbert v. Derwinski, 1 Vet. App. 49, 53 (1990), the Court stated that "a veteran need only demonstrate that there is an 'approximate balance of positive and negative evidence' in order to prevail." To deny a claim on its merits, the evidence must preponderate against the claim. Alemany v. Brown, 9 Vet. App. 518, 519 (1996), citing Gilbert, 1 Vet. App. at 54.

The Board must consider all the evidence of record and discuss in its decision all "potentially applicable" provisions of law and regulation. See 38 U.S.C. § 7104(a); Schafrath v. Derwinski, 1 Vet. App. 589, 592-93 (1991). The Board is also required to provide a statement of reasons or bases for its determination, adequate to enable an appellant to understand the precise basis for its decision, as well as to facilitate further appellate review. See 38 U.S.C. § 7104(d)(1); Allday v. Brown, 7 Vet. App. 517, 527 (1995); Gilbert, 56 (1990). To comply with this requirement, the Board must analyze the credibility and probative value of the evidence, account for the evidence it finds persuasive or unpersuasive, and provide the reasons for its rejection of any material evidence favorable to the claimant. Caluza v. Brown, 7 Vet. App. 498, 506 (1995), aff'd per curiam, 78 F.3d 604 (Fed.Cir.1996) (table).

The Board has thoroughly reviewed all the evidence in the Veteran's claims folder. Although the Board has an obligation to provide reasons and bases supporting this decision, there is no need to discuss, in detail, the extensive evidence submitted by the claimant or on his behalf. See Gonzales v. West, 218 F.3d 1378, 1380-81 (Fed. Cir. 2000) (the Board must review the entire record, but does not have to discuss each piece of evidence). The analysis below focuses on the most salient and relevant evidence and on what this evidence shows, or fails to show, on the claim. The Veteran must not assume that the Board has overlooked pieces of evidence that are not explicitly discussed herein. See Timberlake v. Gober, 14 Vet. App. 122 (2000) (the law requires only that the Board address its reasons for rejecting evidence favorable to the appellant).

Asthma, mycoplasma infection, chronic bronchitis, residuals of pneumonia

Generally, service connection may be granted for any disability resulting from injury suffered or disease contracted in line of duty, or for aggravation in service of a pre-existing injury or disease. 38 U.S.C.A. §§ 1110, 1131. Service connection may be established by demonstrating that the disability was first manifested during service and has continued since service to the present time or by showing that a disability which pre-existed service was aggravated during service. Service connection may be granted for any disease diagnosed after discharge from service, when all the evidence, including that pertinent to service, establishes that the disease was incurred in service. 38 C.F.R. § 3.303.

To establish a right to compensation for a present disability on a direct basis, a Veteran must show: "(1) the existence of a present disability; (2) in-service incurrence or aggravation of a disease or injury; and (3) a causal relationship between the present disability and the disease or injury incurred or aggravated during service." Shedden v. Principi, 381 F.3d 1163, 1167 (Fed. Cir. 2004). 

Disability which is proximately due to or the result of a service-connected disease or injury also shall be service connected. When service connection is thus established for a secondary condition, the secondary condition shall be considered a part of the original condition. 38 C.F.R. § 3.310.

Service connection may be granted for hereditary diseases which either first manifest themselves during service, or which pre-exist service and progress at an abnormally high rate during service. VAOPGCPREC 67-90 (July 18, 1990). VA's General Counsel has further explained that service connection may be granted for diseases (but not defects) of congenital, developmental or familial origin, as long as the evidence as a whole establishes that the familial conditions in question were incurred or aggravated during service within the meaning of VA laws and regulations. VAOPGCPREC 82-90 (July 18, 1990).

VA's General Counsel has also expressly stated that the terms "disease" and "defects" must be interpreted as being mutually exclusive. The term "disease" is broadly defined as any deviation from or interruption of the normal structure or function of any part, organ, or system of the body that is manifested by a characteristic set of symptoms and signs and whose etiology, pathology, and prognosis may be known or unknown. On the other hand, the term "defects" would be definable as structural or inherent abnormalities or conditions which are more or less stationary in nature. See VAOPGCPREC 82-90 (July 18, 1990).

During the Veteran's twenty-six years of Air Force service, he worked in various machine shops. In this capacity, he was exposed to chemicals, fumes, and other toxins, including sulphur-based cutting fluids, PD-680 dry cleaning fluid, lacquer and enamel paints, lacquer thinner, Methyl Ethyl Ketone, cadmium, cyanide, trichloroethanes, copper, nickel, chrome, beryllium copper, methyl dichloride, various types of alcohol, and various types of cleaners, as well as jet fuel and fumes. He contends that asthma, mycoplasma infection, chronic bronchitis, and residuals of pneumonia are all related to these exposures and their latent effects. 

The Veteran's treating physician has submitted several statements to the effect that he believes the Veteran's exposure to toxic substances in service has affected his overall health in a negative manner. 

Because of the complexity of the Veteran's medical problems, and the multiple toxins to which he was exposed during service, the Board requested that a VA physician with expertise in Occupational Medicine and public health review the record. The VA medical opinion obtained in June 2016 shows that the reviewing physician performed a careful and thorough review of the Veteran's medical records and researched the different toxic substances to which he reports having been exposed. Based upon such review and research along with his medical expertise, the physician reached several conclusions. First, he concluded that the various substances the Veteran was exposed to during service less likely played a role in causing or aggravating bronchitis, pneumonia, asthma, and mycoplasma infection. It was also less likely that these exposures played a role in causing common variable immune deficiency. However, he concluded that the Veteran's exposure to beryllium equally likely played a role in causing or aggravating bronchitis, pneumonia, and asthma. The physician noted this case is complicated by the presence of common variable immune deficiency, which was most likely responsible for the mycoplasma infection. 

In conclusion, the physician opined many of the Veteran's current health problems are due to either 1) the common variable immune deficiency, or 2) to exposure to beryllium during service. The physician was unable to narrow the source any further absent several pieces of medical information, to include results of a lung biopsy and/or a lymphocyte blast transformation test, which are not included in the Veteran's claims file, likely because he has not undergone either test. 

The reviewing physician did, however, provide additional guidance which allows the Board to reach a legal conclusion on the Veteran's appeal. While the Veteran and his treating physicians may wish to perform additional testing for purposes of tailoring his treatment regimen, the Board is able to reach a decision as to the legal issue of service connection with the evidence as it currently stands. 

Although the reviewing physician ultimately determined that it was less likely that the various toxic exposures played a role in causing common variable immune deficiency, he also implied that the immune deficiency was initially manifested during service. "While all of the recurrent infections suffered by [the Veteran] while working in the machine shop may have been due to a combination of repeated exposures to a variety of toxins and chemicals, it is more characteristic of the usual course of common variable immune deficiency and is not characteristic of berylliosis." 

However, absent the immune deficiency, the physician stated he would be comfortable attributing all of the Veteran's respiratory symptoms to berylliosis. In other words, the Veteran's multiple disabilities on appeal are related to service one way or the other. 

In response to the VHA opinion, the Veteran's treating physician, Dr. K., issued an
updated opinion in November 2016. He stated that while it is difficult to tie certain chemical exposures to exact conditions, the Veteran's repeated exposure to several different harmful chemical agents, without question, caused him some long term effects. He emphasized that the Veteran had text book symptoms of beryllium exposure. Dr. K. also opined that although the genetic causes of common variable immune deficiency are largely unknown, it was at least as likely as not that the Veteran's CVID was a direct result of repeated exposure to toxic agents. 

According the Veteran every benefit of the doubt, as required by law, the Board therefore holds that service connection for common variable immune deficiency is warranted as either it was first manifested during service or it was caused by the various chemical exposures during service. Thus, all disabilities which are shown to be secondary to common variable immune deficiency are subject to service connection as well. 38 C.F.R. § 3.310. Because asthma, mycoplasma infection, chronic bronchitis, and residuals of pneumonia have been associated with the common variable immune deficiency, it follows that service connection is warranted for these disabilities, as well. 

Erectile dysfunction

Service connection for erectile dysfunction was denied by the RO in January 2010 on the basis that medical evidence of record at that time showed the Veteran's erectile dysfunction was age-related rather than secondary to his service-connected depressive disorder. The Veteran perfected a timely appeal to the Board. 

The Veteran has submitted a copy of medical record in which his treating VA psychiatrist attributed his erectile dysfunction to the side effects of medication which he takes for treatment of his depression. Upon careful review, the Board finds that the evidence is sufficient to grant service connection for erectile dysfunction at this point in time. The medical statement from the Veteran's treating psychiatrist is credible, competent, and persuasive. It does not appear that the prior negative medical opinion took into account the Veteran's medication usage at all. Reference to the website of the particular medication's manufacturer shows that loss of libido is a common side effect of the medication the Veteran is taking. Therefore, according the Veteran every benefit of the doubt, service connection for erectile dysfunction secondary to service-connected depression is granted.

Prostatitis 

Service connection for prostatitis (characterized as an "inflamed prostate condition") was denied by the RO in July 1992, following the Veteran's discharge from service, on the basis that although he had had prostatitis during service, he did not have it upon discharge or upon the subsequent VA examination in 1992. He did not disagree with this denial or submit additional evidence at that time and it thus became final one year after he was notified of the decision in August 1992. 38 U.S.C.A. § 7105; 38 C.F.R. §§ 20.302, 20.1103.

If new and material evidence is presented or secured with respect to a claim that has been disallowed, VA must reopen the claim and review its former disposition. 38 U.S.C.A. § 5108. See Hodge v. West, 155 F.3d 1356, 1362 (Fed. Cir. 1998). "New and material evidence" means evidence not previously submitted to agency decision makers which bears directly and substantially upon the specific matter under consideration, which is neither cumulative nor redundant, and which by itself or in connection with evidence previously assembled is so significant that it must be considered in order to fairly decide the merits of the claim. 38 C.F.R. § 3.156(a). The Court of Appeals for Veterans Claims (Court) has explained that the language of 38 C.F.R. § 3.156(a) creates a low threshold, and views the phrase "raises a reasonable possibility of substantiating the claim" as "enabling rather than precluding reopening." The Court emphasized that the regulation is designed to be consistent with 38 C.F.R. § 3.159(c)(4), which "does not require new and material evidence as to each previously unproven element of a claim." Shade v. Shinseki, 24 Vet. App. 110 (2010).

Since the original final denial, new evidence has been received which bears directly and substantially upon the specific matter under consideration, which is neither cumulative nor redundant, and which by itself or in connection with evidence previously assembled is so significant that it must be considered in order to fairly decide the merits of each claim. With regard to the prostatitis, the new evidence is the diagnosis of common variable immune deficiency. This piece of evidence was not previously considered by agency decision-makers. Applying the liberal standard articulated in Shade, the Board finds ample support for reopening this claim. 

The matter of entitlement to service connection for prostatitis is addressed further in the REMAND below. Review of the procedural history and development of the instant appeal persuades the Board that it cannot decide the merits of the reopened claim without prejudice to the Veteran. Bernard v. Brown, 4 Vet.App. 384 (1993).


ORDER

The appeals for service connection for sarcoidosis and tuberculosis are dismissed.

Service connection for common variable immune deficiency is granted.

Service connection for mycoplasma infection is granted.

Service connection for asthma is granted.

Service connection for chronic bronchitis is granted.

Service connection for residuals of pneumonia is granted.



Continued on next page
ORDER (Continued)

Service connection for erectile dysfunction is granted.

New and material evidence having been submitted to reopen the previously-denied claim for entitlement to service connection for prostatitis, the claim is reopened.


REMAND

As the Veteran continues to receive VA medical care, and as the case must be remanded, his VA medical records should be updated for the file. Any VA medical records are deemed to be constructively of record in proceedings before the Board and should be obtained prior to further review of the claims file. Bell v. Derwinski, 2 Vet. App. 611 (1992). 

In the original denial of the Veteran's claim for service connection for prostatitis, the RO noted that the Veteran had had prostatitis during service, but did not have it at the time of the post-service VA examination. Since the original denial, the Veteran has been diagnosed with common variable immune deficiency, a genetic disease which prevents the body from effectively fighting infections, such as prostatitis. The Board has granted service connection for common variable immune deficiency based upon this opinion. 

Although it may seem logical that the Veteran had an infection of his prostate during service and he also has an immune deficiency, the question of whether the prostatitis he had in service and the prostatitis he has now are manifestations of the service-connected immune deficiency is a medical one and requires medical expertise. Colvin v. Derwinski, 1 Vet. App. 171 (1991). Therefore, upon remand, medical evidence must be obtained to resolve this question.

In a December 2013 decision, the RO denied service connection for PTSD. The Veteran disagreed with this decision the same month, and indeed has submitted multiple statements regarding PTSD within the requisite time period to contest this denial. 38 C.F.R. §§ 20.201, 20.302. The Veteran has already been granted service connection for a depressive disorder; however, recognition of his PTSD is clearly important to him. Following review of the Veteran's electronic claims files; it does not appear that the RO has yet issued a statement of the case regarding PTSD.

After a notice of disagreement has been filed in any claim, the RO is required to issue a statement of the case containing a summary of the evidence, the applicable laws and regulations, and an explanation as to the decision previously reached, unless the Veteran has withdrawn the notice of disagreement. 38 C.F.R. §§ 19.26, 19.29. Technically, when there has been an initial RO adjudication of a claim and a notice of disagreement has been filed as to its denial, thereby initiating the appellate process, a remand is required for procedural reasons. Manlincon v. West, 12 Vet. App. 238 (1999).

Thus, the Board accepts limited jurisdiction over this issue, for the sole purpose of remanding to order issuance of a statement of the case along with information about the process for perfecting an appeal as to this claim, if the Veteran so desires.

Accordingly, the case is REMANDED for the following actions:

1. The RO should obtain all records of VA medical treatment afforded to the Veteran by the Gulf Coast Veterans Health Care System and all related clinics since November 2013 for inclusion in the file.

2. After obtaining the records requested above, the RO should forward the Veteran's entire claims file to a VA medical professional for review and an opinion as to whether a) the Veteran's prostatitis is considered to be chronic in nature, and b) whether prostatitis is proximately-caused by or secondary to common variable immune deficiency OR whether it is related to (a continuation of) the in-service episodes of prostatitis. The complete rationale for all opinions expressed should be fully explained so that the RO, the Board, and the Veteran himself can understand the basis for the opinions.

IF the reviewer deems that further testing or clinical examination of the Veteran would be helpful to resolve these questions, such testing and/or examination must be arranged.

3. After the development requested above is completed, the RO should again review the record and render a determination as to whether the Veteran's prostatitis is secondary to service-connected common variable immune deficiency. If the benefit sought on appeal remains denied, the Veteran and his attorney should be furnished a supplemental statement of the case.

4. The RO should furnish the Veteran with a Statement of the Case pertaining to the issue of entitlement to service connection for PTSD. This claim will not be returned to the Board unless the Veteran perfects an appeal by filing a timely substantive appeal. 

The Veteran has the right to submit additional evidence and argument on the matters the Board has remanded. Kutscherousky v. West, 12 Vet. App. 369 (1999). This claim must be afforded expeditious treatment. The law requires that all claims that are remanded by the Board or by the United States Court of Appeals for Veterans Claims for additional development or other appropriate action must be handled in an expeditious manner. See 38 U.S.C.A. §§ 5109B, 7112 (West 2014).


______________________________________________
MICHELLE L. KANE
Veterans Law Judge, Board of Veterans' Appeals

Department of Veterans Affairs