**Guillermo A. ALEMANY, Appellant,**

v.

**Jesse BROWN, Secretary of Veterans Affairs, Appellee.**

No. 94–1025.

United States Court of Veterans Appeals.

Nov. 20, 1996.

Guillermo A. Alemany, pro se.

Mary Lou Keener, General Counsel; Ron Garvin, Assistant General Counsel; Adrienne Koerber, Deputy Assistant General Counsel; and Vito A. Clementi, Washington, DC, were on the brief for appellee.

Before NEBEKER, Chief Judge, and KRAMER and FARLEY, Judges.

NEBEKER, Chief Judge:

The appellant, Guillermo A. Alemany, appeals from a July 28, 1994, decision of the Board of Veterans' Appeals (Board), which denied service connection for a seizure disorder. For the following reasons, the Court will vacate the Board's decision and remand this matter.

The appellant is a Vietnam veteran who served on active duty in the United States Army from June 1969 to March 1971. Record (R.) at 6, 77. In his answers to a preinduction questionnaire, he acknowledged having had "severe or frequent headaches," but denied any "visual disturbances" or "epilepsy or seizures." R. at 18. In November 1970, during the period of his service in Vietnam, service medical records note that he was experiencing increasingly frequent headaches "accompanied at times by visual blackouts." R. at 64–65. His separation examination did not list any relevant defects or diagnoses. R. at 36–37. In 1985 he was hospitalized after a seizure, and was diagnosed with a "convulsive disorder." R. at 134. A January 1987 letter from Dr. Renato V. Sartori provided a diagnostic impression of "Epileptic Equivalent versus a Basilar Artery Vascular Cephalgia Syndrome." R. at 117. In June 1989, the appellant filed a claim for epilepsy.

During an October 1990 hearing, he testified,

> [A]fter I was discharged from the Army I had several seizures and I lost consciousness, all my life until 1985 ... [when] it was diagnosed and was controlled with medication. I had no idea I had this. The medical opinion was that what I had was hypoglycemia. And this occurred in me several times during the year. I would lose consciousness, I would fall down and [then] I recovered. This was manifested from 1971 to 1985, numerous times, I had those types of episodes.

R. at 207–08. The appellant's physician, Dr. Luis Raul Padilla Santiago, reviewed the ser-

vice medical records and provided his opinion that the symptoms during service may have been the result of an "epileptic spark in the brain." R. at 212. He also stated,

It is possible that the stress of the war may have unleashed a process that was dormant and latent and it is possible that he would have never in his life developed convulsions ... [i]f he had not been under a specific type of stress that could have precipitated the episodes.

R. at 213. The Board remanded for a VA examination, which was conducted in May 1992. A diagnosis of "seizure disorder" was made, but an opinion as to the etiology of the disorder was not provided. R. at 283–85. In June 1993, additional VA examinations were conducted. After reviewing the claims file, the VA examiner, Dr. Luz Anduze, stated that "there is not enough information to clarify definite etiology of his seizure disorder." R. at 277. According to the examination report, Dr. Anduze and another VA examiner, Dr. Miriam Marti, "agree[d] that no obvious etiology for the seizure [disorder] in this veteran can be obtained from information available in [the] record." *Ibid.*

■ In the decision on appeal, the Board stated,

The Board believes that it may be impossible to accurately determine the etiology of the appellant's seizure disorder. However, in our opinion it is unnecessary for us to do so. Our responsibility is limited to determining whether the evidence in favor of the appellant's claim outweighs the evidence against the claim. *Gilbert v. Derwinski,* 1 Vet.App. 49 (1990). We believe that it does not.

The medical evidence of record, with the exception of Dr. Santiago's testimony, fails to identify a cause of the appellant's seizure disorder, which was first diagnosed in 1985, many years after service. There is also no identified cause for the headaches and dizziness reported by the appellant for many years before 1985. In light of this medical evidence, and in particular in light of Dr. [Santiago's] inability to himself identify a seizure disorder until 1985, the Board believes that to say that an episode of headaches in November 1970 marked

the beginning of the seizure disorder is rank speculation.

R. at 11. Of course, an accurate determination of etiology is not a condition precedent to granting service connection; nor is "definite etiology" or "obvious etiology." *See* 38 U.S.C. § 5107(b).

■ The Court concludes that the claim is well grounded because there is competent evidence of a current seizure disorder, episodes of headaches in service, and a "possible" link between the seizure disorder and the headaches. *See Caluza v. Brown,* 7 Vet. App. 498, 506 (1995), *aff'd per curiam,* 78 F.3d 604 (Fed.Cir.1996) (table); *Lathan v. Brown,* 7 Vet.App. 359 (1995). The Court identifies two errors in the Board's decision. First, the Board impermissibly relied on its own unsubstantiated medical conclusion to refute medical evidence favorable to the claim. *See Thurber v. Brown,* 5 Vet.App. 119, 120–22 (1993); *Colvin v. Derwinski,* 1 Vet.App. 171, 175 (1991). Although, as the Board noted, the seizure disorder was not diagnosed until 1985, Dr. Santiago's testimony provided a "possible" link between the onset of the disorder and service. The Board's decision does not point to independent medical evidence disputing this opinion, and thus there is no basis for the Board's rejection of Dr. Santiago's opinion as "rank speculation." The opinion by Dr. Anduze ("not enough information to clarify definite etiology") and the opinion concurred in by Dr. Marti ("no obvious etiology") do not exclude the possibility that Dr. Santiago suggested. Thus, it cannot be that the Board was properly relying on these opinions to refute possible etiology.

■ Second, the Board erroneously required the appellant to prove his claim by a preponderance of the evidence. It is clear that to deny a claim on its merits, the evidence must preponderate against the claim. *Gilbert,* 1 Vet.App. at 54. To express the question in terms that the evidence favoring the claim must outweigh that against the claim is to impose too high a burden of proof on the claimant and is not consistent with the nonadversarial nature of the claims adjudication process. *See Nagler v. Derwinski,* 1 Vet.App. 297, 301 (1991). *Gilbert,* the case

cited in the Board's decision, does not support a requirement that the claimant's evidence outweigh that against the claim. In *Gilbert* the Court held that, pursuant to 38 U.S.C. § 5107(b), where there is an approximate balance of positive and negative evidence, the claimant is entitled to the "benefit of the doubt." 1 Vet.App. at 53.

Given that the Board's analysis of the claim was skewed by the error as to the standard of proof, and given the Board's failure even to address the issue of equipoise, its decision cannot be affirmed. It is noteworthy that the Board believed that "it may be impossible to accurately determine the etiology of the appellant's seizure disorder." R. at 11. In view of this belief it is difficult to see any benefit to be gained by further protracting this seven-year course of adjudications by the Board's seeking further medical opinions. However, we will not bind the Board to this present record, but if the Board should undertake further development, it must do so with the utmost expedition.

Accordingly, the Board's decision is VACATED and this matter is REMANDED for expeditious readjudication, consistent with this decision. *See* Veterans' Benefits Improvements Act of 1994, Pub.L. No. 103–446, § 302, 108 Stat. 4645, 4658 (found at 38 U.S.C. § 5101 note).