Citation Nr: 1725246 
Decision Date: 06/30/17 Archive Date: 07/10/17

DOCKET NO. 12-31 005A ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Atlanta, Georgia


THE ISSUES

1. Entitlement to special monthly compensation (SMC) based on the need for aid and attendance.

2. Entitlement to service connection for loss of use of the left elbow, secondary to shunt placement for dialysis and secondary to service connected diabetic nephropathy.


REPRESENTATION

Appellant represented by: Blinded Veterans Association


ATTORNEY FOR THE BOARD

A. Shawkey, Counsel 


INTRODUCTION

The Veteran served on active duty from September 1976 to September 1988.

This matter comes to the Board of Veterans' Appeals (Board) on appeal from December 2009 and June 2011 rating decisions of the Department of Veterans Affairs (VA) Regional Office (RO) in Atlanta, Georgia. This matter was previously before the Board in March 2016 at which time the case was remanded for further development. 

This appeal was processed using the Virtual VA and Veterans Benefits Management System (VBMS) paperless claims processing systems.


FINDINGS OF FACT

1. The Veteran has suffered blindness in both eyes, rendering him so significantly disabled as to be in need of regular aid and attendance.

2. The Veteran has incomplete partial functional loss, left elbow, secondary to shunt placement for dialysis and secondary to service-connected diabetic nephropathy.


CONCLUSIONS OF LAW

1. The criteria for entitlement to special monthly compensation based on aid and attendance are met. 38 U.S.C.A. § 1114 (m) (West 2014); 38 C.F.R. § 3.350 (2016).

2. Incomplete partial functional loss of the left elbow is proximately due to or the result of service-connected diabetic nephropathy. 38 U.S.C.A. §§ 1131, 5107 (West 2014); 38 C.F.R. §§ 3.303, 3.310 (2016).


REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

I. Duty to Notify and Assist

The Veterans Claims Assistance Act of 2000 (VCAA) describes VA's duty to notify and assist claimants in substantiating a claim for VA benefits. 38 U.S.C.A. §§ 5100, 5102, 5103, 5103A, 5107, 5126 (West 2014); 38 C.F.R. §§ 3.102, 3.156(a), 3.159 and 3.326(a) (2016). Given the favorable action taken in this appeal, no discussion of the VCAA is required.

II. Analysis

A. SMC

Law and Regulations

SMC is available when, as the result of service-connected disability, a Veteran suffers additional hardships above and beyond those contemplated by VA's schedule for rating disabilities. See 38 U.S.C. § 1114; 38 C.F.R. §§ 3.350, 3.352. The rate of SMC varies according to the nature of the Veteran's service-connected disabilities. Basic levels of SMC are listed at 38 U.S.C.A. § 1114 (k). Higher levels of SMC are provided at 38 U.S.C.A. § 1114 (l), (m), (n), and (o).

SMC at the "l" rate is payable when the Veteran, due to service-connected disability, has suffered the anatomical loss or loss of use of both feet or one hand and one foot, or blindness in both eyes with visual acuity of 5/200 or less, or is permanently bedridden or so helpless as to be in need of regular aid and attendance. 38 U.S.C.A. § 1114 (l); 38 C.F.R. § 3.350 (b). Concentric contraction of the field of vision beyond 5 degrees in both eyes is the equivalent of 5/200 visual acuity. Id.

SMC at the "m" rate is warranted if the Veteran, as a result of service-connected disability, has suffered the anatomical loss or loss of use of both hands, or of both legs at a level, or with complications, preventing natural knee action with prosthesis in place, or of one arm and one leg at levels or with complications, preventing natural elbow and knee action with prosthesis in place, or has suffered blindness in both eyes having only light perception, or has suffered blindness in both eyes, rendering such Veteran so helpless as to be in need of regular aid and attendance. 38 U.S.C.A. § 1114 (m); 38 C.F.R. § 3.350 (c).

SMC at the "n" rate is payable when the Veteran, as the result of service-connected disability, has suffered the anatomical loss or loss of use of both arms with factors preventing natural elbow action with prostheses in place, has suffered the anatomical loss of both legs with factors that prevent the use of prosthetic appliances, or has suffered the anatomical loss of one arm and one leg with factors that prevent the use of prosthetic appliances, or has suffered the anatomical loss of both eyes, or has suffered blindness without light perception in both eyes. 38 U.S.C.A. § 1114 (n); 3.350(d).

SMC at the "o" rate is payable when the Veteran, as the result of service-connected disability, has suffered disability under conditions which would entitle such veteran to two or more of the rates provided in one or more subsections (l) through (n) of 38 U.S.C.A. § 1114, no condition being considered twice in the determination, or if the veteran has suffered bilateral deafness (and the hearing impairment in either one or both ears is service connected) rated at 60 percent or more disabling and the veteran has also suffered service-connected total blindness with 20/200 visual acuity or less, or if the veteran has suffered service-connected total deafness in one ear or bilateral deafness (and the hearing impairment in either one or both ears is service connected) rated at 40 percent or more disabling and the veteran has also suffered service-connected blindness having only light perception or less, or if the veteran has suffered the anatomical loss of both arms with factors that prevent the use of prosthetic appliances. 38 U.S.C.A. § 1114 (o); 38 C.F.R. § 3.350(e).

The provisions of 38 U.S.C.A. § 1114 (p) provide for "intermediate" SMC rates between the different subsections based on anatomical loss or loss of use of the extremities or blindness in connection with deafness and/or loss or loss of use of a hand or foot. 38 U.S.C.A. § 1114 (p); 38 C.F.R. § 3.350 (f).

Also, SMC at the aid and attendance rate under 38 U.S.C.A. § 1114 (r) is payable when the Veteran is entitled to SMC at the maximum (o) or (p) levels and the need for aid and attendance is shown on a factual basis; or when the Veteran is receiving compensation at the intermediate rate between (n) and (o) plus (k) and the need for aid and attendance, or a higher level of care, is shown. See 38 U.S.C.A. § 1114 (r); 38 C.F.R. §§ 3.350 (h), 3.352.

The following are accorded consideration in determining the need for regular aid and attendance: inability of claimant to dress or undress himself, or to keep himself ordinarily clean and presentable; frequent need of adjustment of any special prosthetic or orthopedic appliances which by reason of the particular disability cannot be done without aid (excluding the adjustment of appliances which normal persons would be unable to adjust without aid, such as supports, belts, lacing at the back, etc.); inability of claimant to feed himself through loss of coordination of upper extremities or through extreme weakness; inability to attend to the wants of nature; or incapacity, physical or mental, which requires care or assistance on a regular basis to protect the claimant from hazards or dangers incident to his or her daily environment. "Bedridden" will be a proper basis for the determination and is that condition which, through its essential character, actually requires that the claimant remain in bed. The fact that claimant has voluntarily taken to bed or that a physician has prescribed rest in bed for the greater or lesser part of the day to promote convalescence or cure will not suffice. It is not required that all of the disabling conditions enumerated in this paragraph be found to exist before a favorable rating may be made. The particular personal functions which the Veteran is unable to perform should be considered in connection with his or her condition as a whole. It is only necessary that the evidence establish that the Veteran is so helpless as to need regular aid and attendance, not that there be a constant need. Determinations that the Veteran is so helpless, as to be in need of regular aid and attendance, will not be based solely upon an opinion that the claimant's condition is such as would require him or her to be in bed. They must be based on the actual requirement of personal assistance from others. 38 C.F.R. § 3.352 (a).


Facts and Discussion

The Veteran is currently in receipt of a 100 percent disability rating for diabetic nephropathy, status post (s/p) kidney transplant associated with diabetes mellitus (DM). He is also service-connected for proliferative diabetic retinopathy with cataracts, rated 80 percent disabling; DM, rated 60 percent disabling; pruritus associated with DM, rated 60 percent disabling; coronary artery disease with grade I diastolic dysfunction and hypokinesis s/p myocardial infarction with coronary artery bypass graft and post surgical scars, rated 60 percent disabling; right and left lower peripheral vascular disease, each rated 20 percent disabling; right and left lower leg peripheral neuropathy associated with DM, each rated 20 percent disabling; and cysts of the left thyroid, rated 0 percent disabling. 

Additionally, the Veteran is in receipt of SMC under 38 U.S.C. § 1114 (k) and 38 C.F.R. § 3.350 (a) for loss of use of one eye having only light perception and for loss of use of a creative organ. He is also in receipt of SMC under 38 U.S.C. § 1114 (s) and 38 C.F.R. § 3.350 (i) for diabetic nephropathy, rated 100 percent and additional service-connected disability of pruritus, independently ratable at 60 percent. He has further been granted awards for special home adaptation and automobile and adaptive equipment. 

The Veteran asserts that he is entitled to SMC at the aid and attendance rate due to his blindness. He reported in a December 2014 statement that his spouse spends 95 percent of her day looking out for him. He stated that he cannot see well enough to get food out of the pantry or find clothes in his closet. He stated that his spouse prepares his clothes every day and makes sure that he is neat and clean. In a more recent statement in January 2017, he reported that he is unable to clean his house, pay his bills or manage the over 16 medications that he is required to take daily including administering diabetic medication into a diabetic pump. He also noted that he relies on his spouse to take him to his medical appointments as he is unable to drive due to being legally blind. 

The evidence supports the Veteran's assertions that he is legally blind. In this regard, a May 2013 VA outpatient record contains an assessment that the Veteran was legally blind based on his best corrected cental acuity of hand motion at face in the right eye, and 20/20-2 in the left eye with field loss of 15-20 degrees. This record further shows that the Veteran was reminded not to drive, even occasionally, due to his "severe visual field constriction". An eye physician in January 2014 similarly noted that the Veteran is not legal to drive. He stated that while the Veteran's visual acuity in his left eye was 20/25, he had only a small central island of visual field in this eye, and he parenthetically noted that the Veteran had lost a majority of his peripheral vision in the left eye. He went on to note that the Veteran's right eye had only visual acuity for hand motions.

The Veteran was again noted to be legally blind at his most recent VA examination in September 2016. This was based on findings showing that he had only light perception vision in his right eye and 20/70 vision best corrected in his left eye with less than 10 degrees of visual field remaining. The examiner attributed the visual loss largely to the Veteran's proliferative DM retinopathy and to glaucoma which he stated had been accelerated by his DM. He also noted that the Veteran walked with a cane for guidance and he concluded that the Veteran was unable to work. 

As noted, factors that require consideration regarding the need for regular need for aid and attendance include the inability of claimant to dress or undress himself, to feed himself, or incapacity, physical or mental, which requires care or assistance on a regular basis to protect the claimant from hazards or dangers incident to his or her daily environment. Factors such as these were addressed at a VA February 2014 VA Aid and Attendance/Housebound examination. The examination report shows that the Veteran is able to feed himself, but that he is unable to cook and prepare meals for himself or find food in his pantry without the assistance of his spouse. It also shows that he requires assistance getting in and out of bed, finding his clothes, and maintaining his insulin pump and checking his glucose. In addition, there is the opinion of a VA examiner in April 2016 who was asked to evaluate the Veteran's left upper extremity and opined that his need for aid and attendance was based secondarily on his service-connected legal blindness. Then there is the May 2016 opinion of a VA examiner who was similarly asked to evaluate the Veteran's upper left extremity. This examiner referenced an April 2016 record by noting that it showed that the Veteran was independent in activities of daily living with the exception of bathing and dressing activities. He went on to relate these specific functional limitations to the Veteran's visual deficits which he described as poor visual acuity or near blindness.

In light of the foregoing, the Board finds that the weight of the evidence shows that the Veteran has suffered blindness in both eyes, rendering him so significantly disabled as to be in the need of regular aid and attendance at the SMC (m) rate. To this extent, his claim for SMC based on aid and attendance is granted.

Consideration has also been given to rate of SMC even higher than SMC(m). However, the Board does not find that such a rate is warranted. This is so since the Veteran has not been found to be suffering from the anatomical loss of both eyes, nor has he suffered blindness without light perception in both eyes. 38 U.S.C.A. § 1114(n). Moreover he has not demonstrated that he suffers disability under conditions which would entitle him to two or more of the rates provided in one or more subsections (l) through (n) of this section , with no condition being considered twice in the determination. 38 U.S.C.A. § 1114(o).

B. Service Connection for Loss of Use of the Left Elbow

Pertinent Facts

The Veteran is service connected for DM and for diabetic nephropathy. In December 2005, he underwent surgical left arm brachial to basilic vein fistula with transposition to subcutaneous position. This was performed to provide necessary renal hemodialysis access due to his service-connected diabetic nephropathy. A February 2006 follow up note shows that the Veteran was doing well and that his fistula had excellent flow. 

In September 2008, the Veteran presented to a private medical facility complaining of left elbow pain for two months. Tenderness was noted over the ulnar nerve. He was assessed as having pain in joint involving upper arm and he was advised to see an orthopedic physician. An electromyogram (EMG) of the left elbow was performed in September 2008 revealing sensorimotor polyneuropathy and left ulnar neuropathy with drop in motor amplitude around the elbow. 

The Veteran was seen again in May 2009 complaining of left elbow pain. The physician noted that the Veteran had persistent left elbow pain of unclear etiology. He added that he did not believe that the pain was secondary to the Veteran's fistula. 

A magnetic imaging resonance (MRI) of the Veteran's left elbow performed in June 2009 revealed changes consistent with a hemodialysis shunt. No edematous changes were seen in the left elbow and bony structures of the elbow were normal in appearance.

On file is a June 2015 "To Whom It May Concern" letter from a private kidney and pancreas transplant program verifying that the Veteran had received a kidney transplant in January 2009 and had a left upper fistula. The letter states that the Veteran could not lift more than 10 pounds with his left arm and could not have needle sticks in the left arm. It also states that he could not have blood pressure taken in the left arm.

In April 2016, the Veteran was examined by a VA examiner who reported that the Veteran had incomplete loss of functional use of the left elbow more likely than not as a result of residual arterio-venous fistula surgical creation to provide necessary renal hemodialysis access. The examiner stated that despite the temporary necessity obviated by renal transplant, the AV fistula remained in place, as well as the restrictions to not carry/lift over 10 pounds and the very protected-careful use to avoid injury. He stated that the AV fistula was necessitated by endstage (chronic) renal failure with DM a provocateur. 

In May 2016, the Veteran was diagnosed by a VA examiner as having arterio-venous fistula surgically created in left distal arm, and diabetic peripheral neuropathy, upper extremities. Findings at this examination show that the Veteran had normal range of motion in the left elbow and normal muscle strength. Muscle atrophy of the left upper extremity was noted measuring 10 centimeters below the olecranon process. The circumference of the atrophied on the left side was 22.5 cm compared to the normal right side of 23 cm. The examiner opined that it is likely that the fact that the Veteran is right handed and has imposed limitations of no lifting over 10 pounds with the left upper extremity that this has produced the "slight, barely perceptible asymmetry". The examiner remarked that because the AV fistula site must be protected from injury such as blunt force or laceration, certain high-risk jobs in manufacturing and construction might be off limits. He also stated that the 10 pound lifting restriction with the left arm would carry some limitations for certain jobs such as heavy manual labor, but not for sedentary or desk jobs.

A VA peripheral nerve examination report in May 2016 notes that the Veteran was diagnosed as having peripheral neuropathy in 2000 and it reflects the Veteran's report that the condition had progressed to the point of him experiencing tingling and numbness in the fingers and loss of pain and fine touch in his fingertips. His noted symptoms included constant mild pain and intermittent pain of moderate severity. Strength was normal on left elbow flexion and extension and for left wrist flexion and extension. Grip strength was also normal. Additional findings were unremarkable. The examiner remarked that the Veteran retired in 2007 due to kidney disease and blindness and that it is likely that these conditions impacted his ability to work to a greater degree than his left arm limitations. 

The May 2016 VA examiner stated that since the Veteran could perform most activities with the left upper extremity, it would be easier and more precise to delineate those activities which he could not perform. He stated that such activities included a 10 pound lifting restriction due to the Veteran's AV fistula, as well as his having to protect the site of the AV fistula by avoiding sharp power tools and other dangerous objects. He also noted that the Veteran had functional loss of the left upper extremity resulting from pain and numbness due to peripheral neuropathy. He added that while the Veteran's peripheral neuropathy did preclude him from performing specific activities, he might have some safety issues with respect to not being able to feel touch that well at the distal fingertips or with difficulty with fine motor skills such as threading a needle. He reported that none of the Veteran's restrictions would prevent him from performing sedentary to light or limited physical activity, including lifting or typing. 

Law and Regulations

Service connection may be granted for a disability resulting from disease or injury incurred coincident with or aggravated by service. 38 U.S.C.A. § 1131; 38 C.F.R. § 3.303 (a). Service connection generally requires evidence satisfying three criteria: (1) the existence of a present disability; (2) in-service incurrence or aggravation of a disease or injury; and (3) a causal relationship ("nexus") between the present disability and the disease or injury incurred or aggravated during service. Holton v. Shinseki, 557 F.3d 1362, 1366 (Fed. Cir. 2009) (quoting Shedden v. Principi, 38 F.3d 1163, 1167 (Fed. Cir. 2004)).

Service connection may be granted for any disease initially diagnosed after service when all of the evidence, including that pertinent to service, establishes that the disease was incurred in service. 38 C.F.R. § 3.303 (d).

Service connection may alternatively be established on a secondary basis for disability which is proximately due to, or the result of, a service-connected disease or injury. 38 C.F.R. § 3.310 (a).

Except as otherwise provided by law, a claimant has the responsibility to present and support a claim for benefits. VA shall consider all information and lay and medical evidence of record in a case and when there is an approximate balance of positive and negative evidence regarding any issue material to the determination of a matter, VA shall give the benefit of the doubt to the claimant. 38 U.S.C.A. § 5107; 38 C.F.R. § 3.102; Gilbert v. Derwinski, 1 Vet. App. 49, 53 (1990). To deny a claim on its merits, the weight of the evidence must be against the claim. Alemany v. Brown, 9 Vet. App. 518, 519 (1996).



Discussion

The Veteran asserts that he has complete loss of use of the left elbow as a result of a surgical fistula necessitated by his service-connected diabetic nephropathy. Although he underwent a kidney transplant in 2007, the fistula has remained in place in the event of transplant failure. 

The Veteran's upper left extremity symptoms are complicated by his service-connected peripheral neuropathy. In this regard, the May 2016 VA examiner reported that the Veteran experiences functional loss of this extremity due to pain and numbness from his peripheral neuropathy as well as safety issues from having a reduced touch sensation at his distal fingertips. There is also the May 2009 opinion of a VA physician who stated that he did not believe that the Veteran's left elbow pain is secondary to his fistula. That notwithstanding, the evidence is clear in showing that the Veteran also has functional loss due to his left brachial fistula. In this regard, he is restricted from lifting 10 pounds in this extremity and he has to be cautious around certain activities and/or avoid them completely such as using power tools and sharp objects. Additionally, the April 2016 VA examiner diagnosed the Veteran as having incomplete loss of functional use of the left elbow.

As far as the Veteran's assertions that he has complete loss of the use of his upper left extremity, while he is certainly competent to testify to his symptoms, see Jandrea v. Nicholson, 492 F. 3d 1372, 1376-77 (Fed. Cir. 2007), his assertions are not consistent with the medical evidence. Rather, examination findings in May 2016 show that he had normal range of motion in the left upper extremity. Moreover, the May 2016 VA examiner reported that since the Veteran could perform most activities with the left upper extremity, it would be easier and more precise to delineate those activities that he could not perform. Such activities were described as a 10 pound lifting restriction in the left upper extremity and having to use caution around power tools and other dangerous objects. Also, both the April 2016 VA examiner and the May 2016 VA examiner found that the Veteran's upper left extremity did not preclude him from certain types of employment consisting of sedentary to light or limited physical activity, including lifting or typing. The Board finds that the examinations findings and conclusions reached by the trained professionals in April 2016 and May 2016 showing that the Veteran has some functional capacity in his upper left extremity outweighs the Veteran's general lay assertion that he has no use of his upper left extremity.

For the foregoing reasons, the Board finds that the weight of evidence supports granting secondary service connection for incomplete partial functional loss, left elbow, as proximately due to his service-connected diabetic nephropathy. 38 C.F.R. § 3.310.


ORDER

Special monthly compensation (SMC) at the level set forth at 38 U.S.C.A. § 1114 (m) is granted, subject to controlling regulations governing the payment of monetary awards.

Service connection for incomplete partial functional loss, left elbow, secondary to service-connected diabetic nephropathy, is granted.



____________________________________________
ANTHONY C. SCIRÉ, JR.
Veterans Law Judge, Board of Veterans' Appeals



Department of Veterans Affairs