Citation Nr: 1811316 
Decision Date: 02/22/18 Archive Date: 03/06/18

DOCKET NO. 13-00 587A ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Newark, New Jersey


THE ISSUE

Entitlement to an initial rating in excess of 50 percent prior to September 13, 2013, for service-connected posttraumatic stress disorder (PTSD) with alcohol dependency.


REPRESENTATION

Veteran represented by: Veterans of Foreign Wars of the United States


ATTORNEY FOR THE BOARD

L. Bristow Williams, Associate Counsel


INTRODUCTION

The Veteran served on active duty from October 1963 to October 1966.
This matter comes before the Board of Veterans' Appeals (Board) on appeal from an April 2011 rating decision of the Newark, New Jersey, Department of Veterans Affairs (VA) Regional Office (RO).

The April 2011 rating decision granted service connection for PTSD with alcohol dependency and assigned a 30 percent rating, effective October 4, 2010. In a December 2012 rating decision, this evaluation was increased to 50 percent, effective October 4, 2010. In a September 2013 rating decision, this evaluation was increased to 100 percent, effective September 13, 2013. 


FINDINGS OF FACT

1. Prior to January 14, 2013, the Veteran's PTSD was manifested by occupational and social impairment with deficiencies in most areas, but not by total social and occupational impairment.

2. Beginning January 14, 2013, the Veteran's PSTD was manifested by total social and occupational impairment.


CONCLUSIONS OF LAW

1. The criteria for the assignment of an initial 70 percent rating, but no higher, for PTSD have been met. 38 U.S.C. §§ 1155, 5103, 5103A, 5107 (2012); 38 C.F.R. § 4.130, Diagnostic Code 9411 (2017).

2. Beginning January 14, 2013, the criteria for a 100 percent rating for PTSD have been met. 38 U.S.C. §§ 1155, 5103, 5103A, 5107; 38 C.F.R. § 4.130, Diagnostic Code 9411.



REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

I. Duty to Notify and Assist

With respect to the Veteran's claim decided herein, no notice or duty to assist deficiencies have been alleged by the Veteran or his representative. See Scott v. McDonald, 789 F.3d 1375, 1381 (Fed. Cir. 2015) (holding that "the Board's obligation to read filings in a liberal manner does not require the Board . . . to search the record and address procedural arguments when the veteran fails to raise them before the Board.") Dickens v. McDonald, 814 F.3d 1359, 1361 (Fed. Cir. 2016) (applying Scott to a duty to assist argument).

II. Applicable Laws and Regulations

A disability rating is determined by the application of VA's Schedule for Rating Disabilities (Rating Schedule). The percentage ratings contained in the Rating Schedule represent, as far as can be practicably determined, the average impairment in earning capacity resulting from diseases and injuries incurred or aggravated during military service and their residual conditions in civil occupations. Separate Diagnostic Codes identify the various disabilities. 38 U.S.C. § 1155; 38 C.F.R. § 4.1. If there is a question as to which of two evaluations shall be applied, the higher evaluation will be assigned if the disability picture more nearly approximates the criteria for that rating. Otherwise, the lower rating will be assigned. 38 C.F.R. § 4.7. 

PTSD is evaluated under the general rating formula for mental disorders. 38 C.F.R. § 4.130, Diagnostic Code 9411

Under the General Rating Formula, a 70 percent rating is warranted where the disorder is manifested by occupational and social impairment with deficiencies in most areas, such as work, school, family relations, judgment, thinking or mood, due to such symptoms as suicidal ideation; obsessional rituals which interfere with routine activities; speech that is intermittently illogical, obscure, or irrelevant; near-continuous panic or depression affecting the ability to function independently, appropriately, and effectively; impaired impulse control, such as unprovoked irritability with periods of violence; spatial disorientation; neglect of personal appearance and hygiene; difficulty in adapting to stressful circumstances, including work or a work-like setting; and an inability to establish and maintain effective relationships. Id. 

The criteria for a 100 percent rating are total occupational and social impairment due to such symptoms as: gross impairment in thought processes or communication; persistent delusions or hallucinations; grossly inappropriate behavior; persistent danger of hurting self or others; intermittent inability to perform activities of daily living (including maintenance of minimal personal hygiene); disorientation to time and place; memory loss for names of close relatives, own occupation, or own name. Id. 

Ratings of psychiatric disabilities shall be assigned based on all the evidence of record that bears on occupational and social impairment rather than solely on the examiner's assessment of the level of disability at the moment of the examination. Further, ratings are assigned according to the manifestation of particular symptoms. However, the various symptoms listed after the terms "occupational and social impairment with deficiencies in most areas" and "total occupational and social impairment" in 38 C.F.R. § 4.130 are not intended to constitute an exhaustive list, but rather are to serve as examples of the type and degree of the symptoms, or their effects, that would justify a particular rating. Mauerhan v. Principi, 16 Vet. App. 436 (2002).

The Global Assessment of Functioning (GAF) score is a scale reflecting the psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness. Richard v. Brown, 9 Vet. App. 266, 267 (1996). A GAF of 21-30 indicates behavior is considerably influenced by delusions or hallucinations or serious impairment in communication or judgment (e.g. sometimes incoherent, acts grossly inappropriately, suicidal preoccupation) or inability to function in almost all areas (e.g. stays in bed all day; no job, home, or friends). See DSM-IV. A GAF of 31-40 is defined as exhibiting some impairment in reality testing or communication (speech is at times illogical, obscure, or irrelevant), or any major impairment in several areas, such as work or school, family relations, judgment, thinking or mood, (a depressed man that avoids friends, neglects family, and is unable to work; a child that frequently beats up younger children, is defiant at home, and is failing at school). Id. A GAF score of 41-50 is assigned where there are serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) or any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job). Id. 

Where there is an approximate balance of positive and negative evidence regarding any issue material to the determination of a matter, VA shall give the benefit of the doubt to the claimant. 38 U.S.C. § 5107; 38 C.F.R. § 3.102; see also Gilbert v. Derwinski, 1 Vet. App. 49, 53 (1990). The preponderance of the evidence must be against the claim for benefits to be denied. See Alemany v. Brown, 9 Vet.App. 518 (1996).

III. Analysis

The Veteran is service connected for PTSD with alcohol dependence. His disability is rated 50 percent disabling from the effective date of the award, October 4, 2010, to September 13, 2013, at which point a 100 percent rating is in effect. The Veteran argues that his 50 percent rating during the period prior to September 13, 2013 should be increased. In particular, he specifically requested that an effective date of January 14, 2013 be awarded for the award of a 100 percent rating. See the Veteran's November 2013 Notice of Disagreement.

 A. Disability Rating Prior to January 14, 2013

A December 2010 VA Mental Health Outpatient Treatment Plan Note reported a diagnosis of PTSD and assigned the Veteran a GAF score of 55. The report identified over-alertness and avoidance behavior as "Problem 1" and listed goals for addressing this behavior. The report also contained a "Problem 2" that included dreams, intrusive ideation and sobbing. 

A January 2011 VA Mental Health Note reported that the Veteran had poor sleep, anxiety, impatience and depression. The examiner stated that because of anxiety and depression, the Veteran had abused alcohol through the years. The Veteran reported that he was easily emotional, had nightmares, and that he woke early and stayed awake for hours.

In February 2011, the Veteran underwent a VA examination for his PTSD. The examiner described the Veteran's mood and affect as alternating between restricted and subdued and depressed. The Veteran denied suicidal and homicidal ideation and was oriented to time, place, and person. Memory, concentration, abstract reasoning, judgment, impulse control and insight were all intact. The veteran reported flashbacks and vivid memories of his experiences as a military police officer. He reported sleep disorder with problems falling asleep, staying asleep, and nightmares. He further reported a heighted startle response to unexpected movement, especially during sleep. The Veteran endorsed feelings of hypervigilance and tolerance issues. He stated that he habitually checked his house doors and window locks at night and that if he heard an unexpected noise during the night, he would get out of bed and patrol the entire house to ensure it was safe. He reported that he avoided all cues, triggers, and stimuli of any type that evoked memories of the war experience. While he reported that he occasionally played golf with a group of friends, he separated from the group and had no tolerance for conversation or the social aspect of the outing. The examiner concluded that the Veteran appeared emotionally estranged from others and had unprovoked mood swings with irritability and depression. The examiner opined that the Veteran met the diagnostic criteria for moderately severe symptoms of chronic PTSD and assigned a GAF score of 49. The examiner stated that the Veteran exhibited selective isolation, impaired sleep, heightened arousal, flashbacks, mood swings, restricted affect, depression, and alcohol dependency secondary to PTSD.

A February 2011 Buddy Statement from J.L. stated that he had observed the Veteran's "very strong anxieties" and outbursts. He reported that the Veteran had a sense of distrust for his family and friends, and that his impatience was very obvious.

In a February 2011 statement, the Veteran reported that he had to decline work as a substitute teacher on a regular basis because he could not function satisfactorily after restless nights of sleep with flashbacks and because of feelings of insecurity.

An April 2011 Buddy Statement from the Veteran's wife stated that the Veteran was unable to sit in a movie theatre or watch a TV movie as he had difficulty following the plot. She reported that in the previous week, the Veteran had verbally attacked an individual at an open forum of their adult living community without provocation. She also stated that the Veteran had recently purchased three high-powered BB guns and had been shooting at squirrels in their yard and sleeping with a gun under his pillow. Additionally, she stated that the Veteran's children did not feel that they could rely on his judgment, so unless she was present, the Veteran's grandchildren could not stay at their home. She stated that all of the Veteran's filters for acceptable behavior were gone. 

In the May 2011 Notice of Disagreement, the Veteran reported further complications of his PTSD. He stated that in the previous year he was fired from a part-time assignment as a substitute teacher because of behavioral issues related to his PTSD. He reported that he was unable to complete tasks because of concentration problems. He stated that his marriage had many problems due to his PTSD and related alcohol abuse to include: his wife leaving him many times because of anxiety attacks and alcohol abuse; having his wife arrested after she attempted to take car keys when he was unfit to drive; sleeping in separate rooms as he kept a pistol under his pillow; and his wife refusing to attend social functions with him because of his inappropriate comments. Also, he was not allowed to babysit or drive his grandchildren as his children did not trust him.
In a February 2012 letter, the Veteran's therapist reported that he had been receiving weekly psychotherapy since December 2011. He endorsed recurrent symptoms of: flashbacks, nightmares, acute anxiety in public places, intrusive thoughts, irritability, decreased sleep and triggers/reminders of the trauma. The therapist opined that the Veteran's prognosis appeared to be fair to guarded. 

The Veteran submitted an August 2012 letter from his homeowner's association notifying him of a violation of its rules and regulations due to his loud and boisterous behavior when challenging a lifeguard at the community pool. In a January 2013 Notice of Disagreement, the Veteran stated that he had ordered the lifeguard to reopen the pool despite nearby thunder and lightning. He stated that this was related to his excessive drinking, flagrant behavior, and a high level of anxiety. He reported that his impaired impulse control could not be managed.

In the January 2013 Notice of Disagreement, the Veteran also reported a May 2011 fall that caused a serious head injury with subdural hemorrhaging. See May 2011 Neurosurgical Consultation; see also May 2011 Meridian Health Consultation Report. The Veteran stated that while remembering his fallen comrades on Memorial Day and reliving the years of trauma and death, he excessively drank alcohol and injured himself. See January 2013 Notice of Disagreement. Private medical records reflect a blood alcohol level of 370.7 mg/dl following the accident. See May 2011 Dr. D.H. Emergency Department Physician Report.

Resolving all reasonable doubt in the favor of the Veteran, the Board finds that the evidence of records supports a 70 percent disability rating prior to January 14, 2013. Since the effective date of service connection, the Veteran has experienced disturbance of mood, impaired impulse control, difficulty adapting to stressful circumstances, obsessive rituals that interfered with routine activities, depression, anxiety, chronic sleep impairment, and the inability to establish and maintain relationships, all of which are symptoms contemplated under the 70 percent rating criteria. He has had occupational and social impairment in most areas. Additionally, upon VA examination during this time period, the Veteran was assigned a GAF score of 49, indicating the presence of serious symptoms and serious impairment in social, occupational, or school functioning. 

 B. Disability Rating from January 14, 2013
 
In a November 2013 Notice of Disagreement, the Veteran specifically asserted that the effective date for the 100 percent PTSD disability rating assigned in a September 2013 rating decision should be January 14, 2013, the date he submitted additional evidence in his ongoing claim. The September 2013 rating decision stated that September 13, 2013, was the earliest date that it was factually ascertainable that the criteria for the 100 percent evaluation was demonstrated by the evidence or record. For the following reasons, the Board will award an increased rating to 100 percent effective the date requested by the Veteran, January 14, 2013. 

On January 14, 2013, the Veteran submitted evidence in the ongoing claim for an initial increased rating for his service-connected PTSD. This evidence included, but was not limited to, a January 2013 private medical report and a January 2013 buddy statement from the Veteran's wife.

In the January 7, 2013 private medical report, the Veteran reported sleeping issues, nightmares, vivid memories of Vietnam and avoidance. The report stated he actively avoided people, places, the internet, media, or anything tragic that may remind him of combat. The Veteran reported that his friend's son was recently killed in in Afghanistan and that he was unsure why he cried hard when speaking of the deceased soldier. Upon examination, the examiner described the Veteran as hypervigilant throughout the interview. He avoided eye contact and seemed to be constricting his feelings and facial expressions. His speech flow was "a bit pressured." The Veteran reported auditory hallucinations that were remedied if he patrolled the perimeter of his home. He also endorsed previous suicidal ideation with a plan but no intent, means, or past attempts. Upon testing, the Veteran reported extreme problems with vivid memories of prior unpleasant experiences and trouble trusting others. He reported serious problems of: difficulty falling and staying asleep; restlessness; nightmares; irritability; difficulty holding a job; fatigue; marital issues; tension; anxiety; depression; and active avoidance. The Veteran also reported that he: felt guilty and cried all the time; looked at his past and saw a lot of failures, was irritable, restless, and indecisiveness; felt worthless; and had decreased ability to concentrate. The examiner concluded that the Veteran had a limited ability to cope that resulted in angry outbursts.

In the January 8, 2013 statement from the Veteran's wife, she stated that she sometimes thought that Veteran was getting worse rather than better. She reported that sleepless nights and high anxiety behavior had continued. She stated that it had become difficult to have a conversation with the Veteran without a reference to his military mishaps or without him reminding her how many times he was close to dying. She stated that the repetitious comments had become a normal part of his language. She reported that she now had to remind the Veteran to shower after three or four days because his hygiene was lacking, when historically he had good grooming habits. She stated that she has received numerous phone calls where the Veteran told her that he was unable to find his way home after VA appointments. She reported that she took his keys away and drove him all VA appointments. She also stated that recently their friend lost their son in Afghanistan and that the Veteran cried for three days and was barely able to function for weeks after receiving the news. 

Following receipt of this evidence, the RO scheduled the Veteran for another VA examination which confirmed symptoms of such severity warranting a 100 percent rating. As noted above, the RO granted a 100 percent rating effective the date of the September 2013 examination. Upon review of the Veterans submissions in January 2013, which specifically include competent and credible testimony from the Veteran's wife discussing increased speech, hygiene and thought impairment problems, the Board finds that it became factually ascertainable that a 100 percent rating was warranted as of the date of receipt of such evidence. Thus, the evidence supports the Veteran's assertions that January 14, 2013 should be the effective date of the award of his 100 percent rating for PTSD with alcohol dependence. 

As the Veteran has specifically stated to VA that the effective date of the increase to 100 percent for his service-connected PTSD should January 14, 2013, this award represents a full grant of the benefit the Veteran has sought on appeal. 








 (CONTINUED ON NEXT PAGE)
ORDER

Entitlement to an initial disability rating of 70 percent, but no higher, for PTSD with alcohol dependency is granted.

Entitlement to a disability rating of 100 percent for PTSD with alcohol dependency is granted effective January 14, 2013.



____________________________________________
V. CHIAPPETTA
Veterans Law Judge, Board of Veterans' Appeals



Department of Veterans Affairs