﻿Citation Nr: AXXXXXXXX
Decision Date: 06/18/19 Archive Date: 06/18/19

DOCKET NO. 190319-4927
DATE: June 18, 2019

ORDER

Entitlement to service connection for lung cancer residuals, secondary to exposure to contaminants at Camp Lejeune, is granted.

Entitlement to an initial 10 percent rating for residuals of bladder cancer is granted.

FINDINGS OF FACT

1. The evidence is in equipoise as to whether the Veteran’s lung cancer was caused by exposure to contaminants at Camp Lejeune.

2. Throughout the period on appeal, when resolving reasonable doubt in the Veteran’s favor, the Veteran suffered from increased urinary frequency and markedly diminished peak flow rates which can reasonably be expected to result in a daytime voiding interval between two and three hours and/or awakening to void approximately twice per night.

CONCLUSIONS OF LAW

1. The criteria for service connection for lung cancer residuals, secondary to exposure to contaminants at Camp Lejeune, have been met. 38 U.S.C. §§ 1110, 1710(e), 5107; 38 C.F.R. §§ 3.159, 3.303(a), 17.400.

2. The criteria for an initial 10 percent rating for residuals of bladder cancer have been met. 38 U.S.C. §§ 1155, 5107; 38 C.F.R. §§ 3.159, 4.115(a), 4.115(b), Diagnostic Code (DC) 7528.

REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

On August 23, 2017, the President signed into law the Veterans Appeals Improvement and Modernization Act, Pub. L. No. 115-55 (to be codified as amended in scattered sections of 38 U.S.C.), 131 Stat. 1105 (2017), also known as the Appeals Modernization Act (AMA). This law creates a new framework for Veterans dissatisfied with VA’s decision on their claim to seek review. The Board is honoring the Veteran’s choice to participate in VA’s test program, RAMP, the Rapid Appeals Modernization Program.

The Veteran served on active duty from August 1953 to August 1958, including service at Camp Lejeune, North Carolina.

This appeal originally arose to the Board of Veterans’ Appeals (Board) from a January 2016 rating decision of the Department of Veterans Affairs (VA) Regional Office (RO) in Louisville, Kentucky. In September 2018, VA received the Veteran’s opt-in selection of the Supplemental Claim lane of his appeal through RAMP. A February 2019 RAMP rating decision was issued which denied the claims on appeal. The Veteran timely appealed this RAMP rating decision to the Board and requested direct review of the evidence considered by the Agency of Original Jurisdiction (AOJ). Accordingly, only evidence of record at the time of the February 2019 rating decision will be considered.

The Board notes that the Veteran requested a Board hearing on his June 2018 VA Form 9. He withdrew his hearing request in correspondence received in August 2018.

1. Entitlement to service connection for lung cancer residuals, secondary to exposure to contaminants at Camp Lejeune

The Veteran contends he is entitled to service connection for residuals of lung cancer, secondary to exposure to Camp Lejeune contaminants or exposure to in-service asbestos. For the following reasons, the Board finds service connection warranted.

VA has acknowledged that persons residing or working at Camp Lejeune from August 1953 through December 1987 were potentially exposed to drinking water contaminated with volatile organic compounds (VOCs). See Veterans Benefits Administration (VBA) Fast Letter 11-03 (Revised) (January 28, 2013). In the early 1980s, it was discovered that two on-base water-supply systems were contaminated with the VOCs trichloroethylene (TCE), a metal degreaser, and perchloroethylene (PCE), a dry cleaning agent. Benzene, vinyl chloride, and other VOCs were also found to be contaminating the water-supply systems. See VBA Training Letter 11-03 (Revised) (November 29, 2011). Accordingly, VA now essentially presumes that, absent evidence to the contrary, benefits claimants who served at Camp Lejeune between 1953 and 1987 were potentially exposed to the range of chemicals that contaminated the water there. Id. at 6.

Effective March 14, 2017, VA amended its adjudication regulations, 38 C.F.R. §§ 3.307 and 3.309, regarding presumptive service connection, adding certain diseases associated with contaminants present in the base water supply at Camp Lejeune. The final rule establishes that veterans who served at Camp Lejeune for no less than 30 days (either consecutive or nonconsecutive) during this period, and who have been diagnosed with any of eight associated diseases (adult leukemia, aplastic anemia and other myelodysplastic syndromes, bladder cancer, kidney cancer, liver cancer, multiple myeloma, Non-Hodgkin’s lymphoma, and Parkinson’s disease) are presumed to have incurred or aggravated the disease in service for purposes of entitlement to VA benefits. 

Except as otherwise provided by law, a claimant has the responsibility to present and support a claim for benefits under the laws administered by VA. VA shall consider all information and medical and lay evidence of record. Where there is an approximate balance of positive and negative evidence regarding any issue material to the determination of a matter, VA shall give the benefit of the doubt to the claimant. 38 U.S.C. § 5107; 38 C.F.R. § 3.102; see also Gilbert v. Derwinski, 1 Vet. App. 49, 53 (1990). To deny a claim on its merits, the evidence must preponderate against the claim. Alemany v. Brown, 9 Vet. App. 518, 519 (1996), citing Gilbert, 1 Vet. App. At 54.

Here, the Veteran is not asserting that his lung cancer was diagnosed while he was in service, nor do his service treatment records indicate any evidence of this disease. As there are no assertions and no evidence supporting the claim on a direct basis, this decision does not address entitlement to service connection under a theory of direct service connection.

The Veteran contends that he developed lung cancer due to his exposure to contaminants at Camp Lejeune. See 38 C.F.R. §§ 3.307(a)(7), 3.309. In addition, the Veteran states he was exposed to asbestos in a variety of different ways, to include as sleeping under asbestos pipes, working as a tailor in a shop with asbestos pipes, and serving as a fireteam leader during service, all activities which exposed him to asbestos.

The Veteran received a Compensation and Pension (C&P) examination in October 2015 in which the examiner opined the Veteran’s lung cancer was less likely due to exposure to contaminated water at Camp Lejeune and more likely a result of both the Veteran’s documented in-service exposure to asbestos and his history of smoking. 

A June 2016 letter submitted by medical researchers and physicians at the Environmental and Occupational Health Sciences Institute (EOHSI) at Rutgers University determined that it was more likely than not that the Veteran’s lung cancer was caused by his exposure to contaminated water at Camp Lejeune. The examiners cited research from the International Agency for Research on Cancer and the Agency for Toxic Substances Disease Registry to find statistically significant excess risks of lung cancer due to contaminated drinking water at Camp Lejeune, specifically exposure to the chemicals tetrachloroethylene and trichloroethylene. The examiners concluded that the Veteran’s exposure “was significant both in terms of total duration of ongoing exposure as well as the likely extent of his exposure through both drinking water and shower inhalation on a daily basis.” The university professors determined that the specific chemicals to which the Veteran was exposed are associated with an increased risk of both cancer conditions from which the Veteran has suffered, notably lung cancer and bladder cancer. Accordingly, the researchers determined it was more likely than not that the contaminants contributed to the Veteran’s lung cancer

A January 2018 C&P examiner determined it was less likely than not that the Veteran’s residuals of lung cancer were related to his in-service asbestos exposure and more likely related to the Veteran’s years as a smoker. Having smoked for 22 years, the Veteran quit smoking in 1977. 

After careful consideration, the Board finds that the weight of the evidence is in equipoise as to whether or not the Veteran’s residuals of lung cancer are related to his exposure to contaminants at Camp Lejeune and his asbestos exposure or to his history as a cigarette smoker. The Board reiterates that the October 2015 subject matter expert determined the Veteran’s residuals of lung cancer was most likely due to his asbestos exposure and to smoking. The June 2016 medical researchers determined the residuals of lung cancer were most likely due to exposure to contaminated water. Finally, the January 2018 examiner determined the Veteran’s residuals of lung cancer were likely due to his history as a smoker. Accordingly, given the three possible etiologies of the Veteran’s residuals of lung cancer—asbestos exposure, cigarette smoking, and exposure to contaminants at Camp Lejeune—and in light of the scientific evidence showing a documented association between lung cancer and exposure to contaminants at Camp Lejeune, when resolving all reasonable doubt in favor of the Veteran, the Board finds the negative and positive evidence are at least evenly balanced between the two possible service-related causes—asbestos exposure or contaminated water—and cigarette smoking. Accordingly, all reasonable doubt will be resolved in the Veteran’s favor, and service connection for residuals of lung cancer will be granted.

2. Entitlement to an initial compensable rating for residuals of bladder cancer

The Veteran contends he is entitled to an initial compensable rating for his residuals of bladder cancer. For the following reasons, the Board finds a compensable rating not warranted.

DC 7528 provides a 100 percent rating, the only rating available, for malignant neoplasms of the genitourinary system. 38 C.F.R. § 4.115(b). If there has been no local reoccurrence or metastasis, the disability is to be rated on residuals, as voiding dysfunction or renal dysfunction, whichever is predominant. 38 C.F.R. § 4.115(b), DC 7528, Note.

For urinary leakage, the rating schedule provides a 20 percent rating for disability requiring the wearing of absorbent materials which must be changed less than two times per day. Where the disability requires the wearing of absorbent materials which must be changed two-to-four times a day, a 40 percent rating is warranted. A 60 percent rating is warranted for disability requiring the use of an appliance or the wearing of absorbent materials which must be changed more than four times per day. 38 C.F.R. § 4.115(a).

For obstructed voiding, the rating schedule indicates that a 30 percent rating applies if the Veteran has urinary retention requiring intermittent or continuous catheterization. A 10 percent rating applies if there is marked obstructive symptomatology (hesitancy, slow or weak stream, decreased force of stream) with any one or combination of the following: post-void residuals greater than 150 cubic centimeters (cc), markedly diminished peak flow rates less than 10 cc per second by uroflowmetry, recurrent urinary tract infection secondary to obstruction, or stricture disease requiring dilatation every two to three months. A noncompensable rating applies if the disease is manifested by obstructive symptomatology, with or without stricture disease, requiring dilatation once or twice a year. Id.

Regarding urinary frequency, the Board notes that a 10 percent evaluation is warranted with daytime voiding intervals between 2 and 3 hours, or awakening to void 2 times per night. A 20 percent evaluation is warranted with daytime voiding intervals between 1 and 2 hours, or awakening to void 3 to 4 times per night. A 40 percent evaluation is warranted with daytime voiding intervals of less than an hour, or awakening to void 5 or more times per night. Id.

The Veteran received a VA examination in July 2017. He reported that he was diagnosed with bladder cancer 13 or 14 years prior to the examination, and he had not suffered from recurrences. The examination revealed the Veteran did not suffer from a voiding dysfunction, urolithiasis, or any bladder or urethral infections; the Veteran’s neoplasms or metastases were malignant, but in remission. The Veteran did not suffer from any residual complications or conditions due to the neoplasm or its treatment.

August 2018 treatment notes stated that the Veteran suffered from a voiding dysfunction with increased symptomatology. The Veteran reported urinating with more urgency and frequency, as well as urethral stricture. Two voiding flow studies revealed only 12 cc residuals with a low flow and 10 ccs per second. Lastly, the Veteran reported urinating up to two or three times per night with a decrease in his stream. 

A December 2018 radiology report revealed the Veteran’s prevoid bladder volume was calculated at 622.2cc. His postvoid residual was calculated at 192 cc. 

The Veteran received a VA examination in February 2019. The examination revealed the Veteran did not suffer from a voiding dysfunction, urolithiasis, a bladder or urethral infection, or other bladder/urethral conditions; the Veteran’s malignant neoplasms or metastases were malignant, but in remission. The Veteran did not suffer from any residual complications or conditions due to the neoplasm or its treatment. 

Following a review of the evidence, the Board finds the Veteran entitled to an initial 10 percent rating. Although the VA examinations of record (including, most recently, in February 2019) reflect that the Veteran does not suffer from a voiding dysfunction, the Veteran’s private medical reports and treatment notes clearly state that he receives ongoing medical care for a voiding dysfunction manifested by urinary urgency and frequency, and the Veteran has undergone multiple tests to treat his dysfunction. Moreover, a December 2018 ultrasound of the bladder showed a “large post void residual.” Although there is no definitive evidence of record establishing the precise frequency of his urination, nor of the significance of any urine leakage, the Board finds that, when resolving reasonable doubt in the Veteran’s favor, the most salient evidence reveals that the Veteran suffers from urinary frequency which forces him to get up at least two to three times a night and obstructed voiding with markedly diminished peak flow rates—all factors necessitating a 10 percent rating. See 38 C.F.R. § 4.115(a).

The Board finds the Veteran not entitled to a rating greater than 10 percent, as he has not demonstrated that he suffers from voiding three to four times per night or daytime voiding three to four times an hour, or urinary retention requiring intermittent or continuous catheterization, or a disability requiring the wearing of absorbent materials which must be changed less than two times per day. There is also no evidence of urinary tract infections or renal dysfunction that would warrant a rating in excess of 10 percent.

(Continued on the next page)

 

In sum, the Board finds that the criteria for an initial 10 percent rating are met, pursuant to the provisions governing urinary leakage under 38 C.F.R. § 4.115(a). To that extent, the claim for an increased rating will be granted. However, the most probative evidence does not show renal or voiding dysfunction to such a degree that would warrant a rating in excess of 10 percent.

 

LESLEY A. REIN

Veterans Law Judge

Board of Veterans’ Appeals

ATTORNEY FOR THE BOARD C. Ryan, Associate Counsel

The Board’s decision in this case is binding only with respect to the instant matter decided. This decision is not precedential, and does not establish VA policies or interpretations of general applicability. 38 C.F.R. § 20.1303.